**FANCHON & MARCO, Inc.**

v.

**PARAMOUNT PICTURES, Inc. et al.**

**No. 13308.**

United States Court of Appeals,
Ninth Circuit.

Aug. 11, 1954.

MacFarlane, Schaefer & Haun, James H. Arthur, Los Angeles, Cal., Russell Hardy, Washington, D. C., for appellant.

O'Melveny & Myers, Homer I. Mitchell, Newlin, Holley, Tackabury & Johnston, W. B. Carman, Philip F. Westbrook, Jr., Frank R. Johnston, Hudson B. Cox, Los Angeles, Cal., for appellees.

Before ORR, LEMMON and FEE, Circuit Judges.

JAMES ALGER FEE, Circuit Judge.

This is an action under the Anti-Trust Act by a corporation which owns and operates motion picture theatres in Los Angeles and elsewhere against distributors of motion pictures and other theatre owners and operators. It is claimed there is a combination of defendants, who control eighty per cent of the supply and have a monopoly of distribution to refuse discriminatorily to release motion pictures to the Baldwin Theatre, operated by plaintiff on the outskirts of the metropolitan core, on first run day and date with theatres in downtown Los Angeles and to confine that house to a twenty-one day clearance in favor of the first run theatres, denying it a seven day

or fourteen day basis. The action is not based on price fixing, but is concerned exclusively with runs and clearances. The Trial Judge found against plaintiff and dismissed the action.

The lengthy record and exhibits introduced have been carefully considered by this Court. Based upon this examination of the record ruled upon by an able and experienced Trial Judge, Hon. Leon Yankwich, who heard the case without a jury and who is well acquainted with the local distribution of motion pictures and operation of theatres in the Los Angeles area, the judgment must be affirmed.

During the course of the trial, the Judge carefully defined the issues of fact. A reading of the record indicates a crystallization of issues as exact as if there had been a definitive pre-trial order. Upon the issues so developed, the Trial Judge ruled seriatim.

■ The elaborate findings of fact have been reviewed, and there is no one of them which is clearly erroneous. Indeed, on the record, the Court confirms all the findings.

The essence of the findings is that defendants have not contracted, combined or conspired among themselves or with any motion picture producing or distributing companies, with Fox West Coast or with anyone else, in violation of the Act or as charged in the complaint. It is found that, in all determinations and action affecting appellant or the Baldwin Theatre, each distributor acted in accordance with its individual judgment. It is found that, in licensing first runs in the Los Angeles area, each acted individually in accordance with its own judgment, taking into consideration the general economic and business requirements of the distribution of motion pictures and special conditions affecting the particular distributor. It is found that the general pattern of negotiating licenses for exhibition in theatres with clearances to protect first runs is based upon the location of the theatre being considered, whether in more or less competitive municipalities on the perimeter of urban Los Angeles or in urban Los Angeles itself. It is found that the re-fusal of a first run to the Baldwin and its licensing on a twenty-one day availability was not the result of any concert, combination, conspiracy or agreement on the part of defendants or of any purpose to favor Fox West Coast, but was the result of each distributor for himself determining the business and economic grounds. It is found that, although the result may have been the refusal of a different basis to Baldwin, this was not due to concert of action among defendants.

The appellant sets out in its brief before this Court the ground of appeal as follows:

"Specifications of Error

"The Trial Court erred in finding and concluding, as a matter of fact and of law, that the unanimous refusals of appellees to license pictures to appellant for first run use at the Baldwin Theatre, or for second run use on 7 days availability, or on 14 days availability, were not in pursuance of conspiracy and monopolization, but were the individual acts of appellees."

An examination of the specifications themselves indicates that this statement is representative as to the points raised. The errors specified are general, and there is no indication that the findings are clearly erroneous by virtue of a special situation such as a drive-in theatre.[1]

The appeal relates entirely to questions of fact.

The only question of law possibly suggested is the use and effect of the decrees in United States vs. Paramount and

1. Milgram v. Loew's, Inc., 3 Cir., 192 F.2d 579. In that case, the trial court found conspiracy on the facts, and the appellate court affirmed. However, see dissenting opinion by Hastie, C. J., 192 F.2d at pages 587-595.

allied cases.[2] The weight and effect thereof were for the trial court. The main complaint [3] of appellant is that the Trial Judge did not give the findings and judgments an effect which would result in findings of discrimination against appellant. It is here contended that these decrees were "conclusive" or "almost conclusive." A conclusive presumption is a rule of law. No rule of law required appellees to give Baldwin a preferred position irrespective of conditions at the time of filing of this case. The effect given the judgment by law is extremely limited. The trial court clearly stated the rule of the statute [4] and gave these decrees and judgments the effect of prima facie evidence in favor of appellant as though it had been a party thereto, but properly found under the evidence as a whole that the presumption was rebutted and that appellees were not at the time conspiring to discriminate against the Baldwin or appellant.

Appellant contends there is no question as to credibility of a judgment as against witnesses. This is true. Nor can there be any contradiction of the effect to be given to the judgment, as that is fixed by statute. On the other hand, the weight of the judgment, if given full legal effect when balanced with changed conditions and present trade practices, may be very slight. For it must be remembered the decrees in above cases related to a combination to fix prices, runs and clearances, whereas all agree the present case is not based upon any claim of price fixing.[5] The basic Paramount case indeed had its major emphasis upon price fixing. The findings upon which that decree was based indicated that runs and clearances were systematized. There were, it is admitted, no injunctions or prohibitions against the continuance of this system. It would seem the gravamen of the concert of action found in that and related cases was price fixing and a series of other controls. However, the trial court found the other proscribed practices have been abandoned.

"Whatever may have been the practice of the defendants before the decree of the statutory court, it is quite evident that * * * there has been an abandonment of the condemned distributing policies, such as

2. The decrees in evidence are as follows: United States v. Paramount Theatres Corporation, decree, December 31, 1946; findings of fact, conclusions of law and decree, June 11, 1946; decree, March 31, 1948; decree, May 3, 1948, D.C., 66 F. Supp. 323; 70 F.Supp. 53, reversed in part, affirmed in part and remanded to the statutory court by the Supreme Court of the United States, 334 U.S. 131, 68 S.Ct. 915, 92 L.Ed. 1260; United States v. RKO, consent decree, November 8, 1948; United States v. Paramount, consent decree, March 31, 1949. Orders severing and terminating the litigation were entered as to Paramount April 21, 1949, and as to RKO January 18, 1950. On February 8, 1950, the statutory court in United States v. Paramount (Paramount being no longer a party) entered a decree against Loew's, Warner's and Fox, and a decree against Columbia, Universal and United Artists.

3. On the basis of some clerical slips as to figures and dates in the opinion of the trial court, appellant also complains that some of the decrees in evidence as exhibits were not considered. The contention has no merit, since the dating on the exhibits themselves in evidence is confused.

4. Fanchon & Marco v. Paramount Pictures, Inc., D.C., 100 F.Supp. 84, 88.

5. There is no charge here of a conspiracy to fix prices. The trial court so recites in the opinion on file. No allegation of an attempt to fix prices is made in the complaint. And, in response to questions from the Court on oral argument, counsel for appellant admitted this is not a case based upon price fixing. The question as to whether there was a conspiracy was fully considered upon the basis laid in the trial court by the complaint and other proceedings. The findings on this point were positive. This distinguishes J. J. Theatres v. Twentieth Century-Fox Film Corporation, 2 Cir., 212 F.2d 840, where the question of conspiracy to deprive the theatre of preferred position was withdrawn from the jury.

'zoning', 'block-booking', 'key' deals, and the like, a revision of clearances and the establishment of a system of picture-by-picture exploitation." [6]

█ Notwithstanding, there is a distinct tendency in the oral presentation and briefs of appellant here to slant the argument as though price-fixing were the key to this case and to go outside the record in referring to documents and other factors. This is improper. The case should be tried on the same basis and theory in this Court as in the District Court.

The District Court found the systems of runs and clearances not in itself illegal. Also, it found that vertical and horizontal combinations are not in themselves illegal. The regulation of distribution was required by the nature of the product and by the economic and social forces prevailing in the particular area. The pattern of licensing used in the industry as a whole and in the Los Angeles area was lawful. It would become illegal only if set up by concert of action and was unreasonable. In this case the record showed parallel action by various appellees in distribution, but the methods used were the choice of the individual distributors, and were not dictated by a conspiracy. The Court found that such action was reasonable toward appellant.

"No parallelism, conscious or unconscious, can overcome a finding of reasonableness." [7]

The impression gathered from the whole of the record is that of a highly competitive industry, in which the managers of appellant took an active part and indeed profited from some of the situations of which they now complain. It was only when appellant found the same conditions operated against it as well as in its favor and when its vociferous demands that economic law be repealed in its favor were disregarded, that suit was commenced.

It is said that Fox West Coast Theatres had tremendous buying power, which was used to exclude appellant from the first run market. But this is a highly competitive market, and, if there were actual economic advantages offered to a distributor by one group of prospective purchasers over appellant, there is no reason that the latter can complain. If appellant had built the theatre in the heart of the Mojave, there might have been other economic discriminations of which to complain.

█ In considering whether there has been unlawful discrimination, the courts hold that an individual distributor not engaged in a conspiracy may consider in determining whether to give a preferential clearance to a particular motion picture house, such as Baldwin, the admission prices charged there, all the factors involved in the location and availability of the particular theatre, the possibility and probability of similar applications by theatres adjacent to that making the application, the competition existing or to be expected with other theatres in the area, the policies followed or to be expected of the applying theatre, since policy of exhibition must ordinarily be consistent, and the policy of the particular distributor as to the use of "showcase" exhibition.

The net result is that this is an appeal solely on questions of fact. Notwithstanding the reversal of some District Courts in this field upon the basis of erroneous findings, we do not think the appeal on the facts and the weight of the evidence in this case from an able and experienced judge who had experience in the exact area was justified. Although this Court has reviewed the long and complicated record with extreme care because of the questions of fact so raised, we do not believe an appellate court, already burdened, should have been required to pass on such questions.

Affirmed.

6. D.C., 100 F.Supp. 84, 95.

7. D.C., 100 F.Supp. 84, 104.