The **LAITRAM CORPORATION,**
Plaintiff,

v.

**KING CRAB, INC.,** a corporation,
**Defendant.**

Civ. No. A–32–62.

United States District Court
D. Alaska,
at Anchorage.
Oct. 6, 1965.

W. C. Arnold, Anchorage, Alaska, James L. Magee, of Skeel, McKelvy, Henke, Evenson & Uhlmann, Seattle, Wash., for plainiff.

Thomas J. Greenan, of Ferguson & Burdell, Seattle, Wash., for defendant.

HODGE, District Judge.

Since the entry and publication of my opinion in the above-entitled case dated August 19, 1965, D.C., 244 F.Supp. 9, plaintiff filed herein a motion for new trial or, in the alternative, for an order amending the Findings of Fact and Conclusions of Law contained in the written opinion of the Court under the provisions of Rule 52, Federal Rules of Civil Procedure.

A new trial in this case would serve no useful purpose, as the issues were fully presented by both sides, and such motion must be denied. However, after hearing oral argument upon the alternative motion and after further research, I feel compelled to modify the Conclusions of Law contained in my opinion with respect to the defendant's affirmative defense (e) relating to discrimination in lease rates of peeling machines between lessees of machines in Oregon, Washington and Alaska and lessees of machines in the Gulf area. In this respect, after finding a misuse of plaintiff's patents by such discrimination in the lease rates the opinion indicates that such misuse in effect constituted a violation of Section 2 of the Sherman Act.

This opinion was arrived at principally upon the authority of the United States District Court for the District of Mass. in United States v. United Shoe Machinery Corp., 110 F.Supp. 295. This case was an action by the United States to restrain alleged violations of Secs. 1 and 2 of the Act, 15 U.S.C.A., Secs. 1 and 2. In a lengthy opinion Judge Wyzanski found, among other things, that the defendant had discriminated in its price-fixing policy for shoe machinery and concluded that such discriminatory pricing policy in effect violated the provisions of Sec. 2 of the Sherman Act, and ordered the defendant to purge itself of this practice, together with other violations found in regard to the defendant's leases, and reviews particularly, beginning at p. 341, the historical development of the provisions against monopoly under the Sherman Act.

█ I am now convinced that the doctrine of misuse of patents does not necessarily include a violation of the antitrust laws of the United States, for the reason that (as previously stated in such written opinion) the doctrine of misuse rests upon the principle that the holder of an exclusive patent privilege granted in furtherance of public policy may not claim protection of his grant by the court when such patent privilege is being used to subvert that policy.

█ The contention that any patent misuse does not bar an infringement suit unless the patentee's conduct is such as would constitute a violation of Section 3 of the Clayton Act is expressly denied in the recent case in the 9th Circuit of Ber-

lenbach v. Anderson and Thompson Ski Co., 329 F.2d 782. In this case the Circuit Court, in affirming a judgment of the District Court for the Western District of Washington, expressly states:

"In view of the history and policy of the defense of patent misuse we find no merit in appellant's contentions that the proof of substantial lessening of competition is a prerequisite to finding patent misuse." (citing cases)

The court refers in this opinion to the decision of the Supreme Court of the United States in Morton Salt Co. v. G. S. Suppiger Co., 314 U.S. 488, p. 490, 62 S.Ct. 402, p. 404, 86 L.Ed. 363, in which case the Supreme Court stated:

"The Clayton Act authorizes those injured by violations tending to monopoly to maintain suit for treble damages and for an injunction in appropriate cases. 15 U.S.C. §§ 1, 2, 14, 15, 26. But the present suit is for infringement of a patent. The question we must decide is not necessarily whether respondent has violated the Clayton Act, but whether a court of equity will lend its aid to protect the patent monopoly when respondent is using it as the effective means of restraining competition with its sale of an unpatented article."

And again, at p. 493, 62 S.Ct. at p. 405:

"Maintenance and enlargement of the attempted monopoly of the unpatented article are dependent to some extent upon persuading the public of the validity of the patent, which the infringement suit is intended to establish. Equity may rightly withhold its assistance from such a use of the patent by declining to entertain a suit for infringement, and should do so at least until it is made to appear that the improper practice has been abandoned and that the consequences of the misuse of the patent have been dissipated."

Similarly, the U. S. District Court for the District of Delaware, in the case of Zenith Radio Corp. v. Radio Corp. of America, 106 F.Supp. 561, at p. 576, distinguishes between patent misuse in infringement suits and the issues and proof in antitrust suits.

Moreover, the patent misuse in the United Shoe Machinery Corp. case was found by the court to be with relation to leases of its machinery. In the case at bar there was no evidence with respect to restraining competition of plaintiff's peeling machines, but rather the effect of such price discrimination upon the product of such machines, being canned shrimp.

I had also found in such opinion that there was no violation of the antitrust laws proven by the defendant aside from such discrimination in leasing rates.

I conclude, therefore, that although the double leasing rate was discriminatory and resulted in an unfair competitive disadvantage to shrimp producers in the Northwest and Alaska, constituting patent misuse, such misuse did not in this instance create a monopoly, but in effect prevented the plaintiff from enforcing its patent privilege by injunctive relief or damages until plaintiff purged itself of such practice, which the evidence disclosed was done promptly by plaintiff following the original decision of the hearing examiner in the Federal Trade Commission proceedings referred to in such opinion.

This conclusion will make no difference in the result, that is, the judgment entered denying plaintiff any relief in damages during the period of the infringement, and the permanent injunction restraining defendant from further use of the Skrmetta machines, are expressly confirmed.

Plaintiff also suggests some other minor corrections in the Court's Findings of Fact as indicated by the deposition of James M. Lapeyre, but I do not find these suggested corrections of sufficient importance to in any way change the result.

Following the execution by the Court on September 22, 1965, of the writ of

permanent injunction as ordered by such written opinion, defendant submitted its own version of injunction, but I find that the writ as issued conforms specifically to the provisions of Sec. 271(b) and 271 (c) of Title 35 U.S.C.A., and the writ lodged by defendant will therefore be denied.