The **PEELERS COMPANY**, a Partnership, (now Laitram Corporation), Plaintiff,

v.

Ivar **WENDT** and Richard (Dick) Sutterlin, copartners doing business as Sutterlin and Wendt, Defendants.

**CROWN PACKERS, INC.**, et al., Plaintiffs,

v.

Emile M. **LAPEYRE**, Emile M. Lapeyre, Jr., Fernand S. Lapeyre, James M. Lapeyre, Andre C. Lapeyre, individually, as copartners trading and doing business as the Peelers Company, and Grand Caillou Packing Company, Inc., a Louisiana corporation, and a commendam partner in the Peelers Company, Defendants.

Nos. 2350, 2797.

United States District Court
W. D. Washington, S. D.

Oct. 29, 1966.

Ferguson & Burdell, Charles S. Burdell, Thomas J. Greenen, Haugland & Sherrow and Dale E. Sherrow, Seattle, Wash., John E. Close, Aberdeen, Wash., for claimants.

Skeel, McKelvy, Henke, Evenson & Uhlmann, W. R. McKelvy, James L. Magee and Michael Mines, Seattle, Wash., Kelley, Drye, Newhall, Maginnes & Warren and John J. Loflin, Jr., New York City, Keith, Johnston, Isner & DesMarias and Guy W. Shoup, New York City, Wm. C. Arnold, Anchorage, Alaska, for defendants.

## MEMORANDUM DECISION

BOLDT, District Judge.

Eleven claims for treble damages, all grounded on the same alleged Sherman Act violations, were asserted in these cases. The claims were made by the several plaintiffs in Cause #2797 and, as a counterclaim in Cause #2350, by the defendants Wendt and Sutterlin, co-partners. All of the claims in Cause #2797 were asserted against Peelers Company, a partnership, and its individual members. In Cause #2350 Laitram Corporation, successor in interest to the Peelers partnership, was named, duly served with process and participated in the proceedings as a party. In the jury instructions, for brevity, the parties asserting the claims were called claimants, and the adverse parties were called defendants. The same designations will be used herein.

The claims were presented for consolidated jury trial on the contentions of the parties and the issues specified in the final pretrial order. Upon the stated contentions and issues recovery by any one or more of the claimants was possible under any one of the following bases of recovery: (1) restraint of trade by a combination of defendants in violation of Section 1 of the Act; (2) monopolizing in violation of Section 2 of the Act by a combination of defendants; (3) monopolizing by a single defendant; (4) attempting to monopolize by a singe defendant; attempting to monopolize by a combination of defendants.

There was substantial evidence from which the jury might reasonably have found facts sufficient to sustain recovery by one or more of the claimants on any of the above grounds asserted by claimants. Therefore, it was required that all of the several alternative bases of recovery be submitted to the jury under instructions stating claimants' contentions and the essential elements of each alleged basis of recovery. Unless these circumstances are constantly kept in mind the contentions raised by defendants' motions for judgment n. o. v. and for new trial cannot be correctly understood and fairly determined. Early in the charge the jury were instructed:

"The instructions are prepared as an inter-related whole, that is, everything stated in one part or phase of the instructions is stated in the light of and to be considered with all other statements or parts or phases of the instructions. This means that no juror should take some particular part or

phase of the instructions, isolate it and consider or apply it apart from all else stated in the instructions. The point is that not all that is to be said on any subject can be said in a single sentence or paragraph or even page, perhaps, and if each particular matter were to be repeated each time it was applicable, the instructions would go on interminably.

"Therefore, each particular principle applicable to the case is stated for the most part once; sometimes it may be necessary to repeat to some extent or by reference. Every statement in the instructions is made on the assumption that the jury will apply that particular statement in the light of all other statements made in the instructions. This is a vital and essential assumption, and if the jury do not do that, but take some particular statement in the instructions and fail to consider it in connection with the other applicable principles stated in the instructions, the jury will, of course, be defeating the object of the instructions, which is to state the whole law of the case and to be applied by the jury as the whole law of the case."

The substance of this admonition was again stated at the end of the charge. The directions thus given the jury are equally applicable in examining defendants' post-verdict motions and would be violated by an out-of-context consideration of any of the questions now presented.

Because of the variety of possible bases of recovery and of fact issues, much time and effort were expended by the court in the preparation of instructions covering, without unnecessary repetition, all subject matter required to be included in the charge. To assist the jury in understanding and applying the instructions and in considering the evidence as related to the several Sherman Act violations asserted by claimants, a copy of the entire charge, captioned and indexed by subject matter, was in the juryroom for reference and study by the jury throughout their deliberations.

In the recited circumstances it would be especially misleading and unfair both to the jury and to the court, to review any post-verdict contention apart from the pre-verdict situation or to consider any particular statement in the instructions separate from and unrelated to all other statements contained in the charge. Also, it is essential that the special and general verdicts be considered in relation to each other and that all the verdicts be interpreted in the light of the entire instructions upon which the verdicts were determined by the jury.

From the special verdicts it is clear that the recoveries awarded by the general verdicts were based solely on a finding by the jury that defendants had violated Section 2 of the Sherman Act by single-firm monopolization in excess of patent monopoly. This ground of recovery was clearly within claimants' contentions in the pretrial order although not emphasized by isolation from the several other asserted grounds of recovery now eliminated by the special verdicts. Since approval and entry of the final pretrial order the court has always considered alleged single-firm monopolization to be within the issues for trial and has never understood any counsel to assert otherwise until such contention was urged in the briefs on the post-verdict motions.

Section 2 of the Sherman Act expressly condemns monopolizing by a single individual or firm:

"Every person who shall monopolize * * * any part of [interstate] trade or commerce shall be [in violation of this act]."

Monopolizing was defined in the jury instructions as follows:

"Monopolizing is the acquisition or retention of power to control prices, or to exclude competitors in interstate commerce in commodities sold or distributed in the same market. The power to monopolize does not necessarily require that entire control of pricing or competition be acquired of the market in a particular commodity. The Sherman Act prohibits the monopolizing, in excess of lawful patent monop-

oly, of any part of the market for any product in interstate trade or commerce."

The quoted definition, at least for the purposes of this particular litigation, is fully supported by numerous decisions of which the following are typical: United States v. E. I. Du Pont De Nemours & Co., 351 U.S. 377, 76 S.Ct. 994, 100 L.Ed. 1264; American Tobacco Co. v. United States, 328 U.S. 781, 66 S.Ct. 1125, 90 L.Ed. 1575.

■ Repeatedly it has been held that monopoly rights granted by a patent are not absolute but are limited by the Sherman Act and by other laws not now pertinent.

" * * * [P]ossession of a valid patent or patents does not give the patentee any exemption from the provisions of the Sherman Act beyond the limits of the patent monopoly." United States v. Line Material Co., 333 U.S. 287, 308, 68 S.Ct. 550, 561, 92 L.Ed. 701.

"The limited monopolies granted to patent owners do not exempt them from the prohibitions of the Sherman Act and supplementary legislation." Standard Oil Co. (Indiana) v. United States, 283 U.S. 163, 169, 51 S.Ct. 421, 423, 75 L.Ed. 926.

" * * * the patent monopoly may not be used to disregard the antitrust laws * * *." Sears, Roebuck & Co. v. Stiffel Co., 376 U.S. 225, 84 S.Ct. 784, 788, 11 L.Ed.2d 661.

" * * * Rights conferred by patents are indeed very definite and extensive, but they do not give any more than other rights an universal license against positive prohibitions. The Sherman law is a limitation of rights, ——rights which may be pushed to evil consequences and therefore restrained." Standard Sanitary Mfg. Co. v. United States, 226 U.S. 20, 49, 33 S.Ct. 9, 15, 57 L.Ed. 107. Hartford-Empire Co. v. United States, 323 U.S. 386, 406, 65 S.Ct. 373, 384, 89 L.Ed. 322.

■ A basic purpose of the Sherman Act in condemning monopoly was to protect competition and prevent unreasonable impairment thereof.

"In the Sherman * * * Act, Congress was dealing with competition, which it sought to protect, and monopoly, which it sought to prevent." Standard Oil Co. v. Federal Trade Comm'n, 340 U.S. 231, 248, 71 S.Ct. 240, 249, 95 L.Ed. 239.

"[T]he basic and underlying purposes of the antitrust laws [are] to preserve competition and to protect the consumer." Conference of Studio Unions v. Loew's, Inc., 9 Cir., 193 F.2d 51, 55.

Many other decisions are to the same effect.

■ Food packers who are required by a patentee owner of processing machinery to pay substantially higher lease rates for use of such machinery than are paid for the use of identical machinery by their competitors selling food processed by the machinery in the same relevant market, necessarily have greater expense for machinery rental than their competitors and in that particular the ability of the disfavored food packer lessees to compete in the relevant market may be diminished. The jury in the present cases might reasonably have found the following facts proved by a preponderance of the evidence: (1) the defendants had no reasonable business necessity or justification for imposing unequal lease rates for the use of their machinery; (2) in all particulars relevant to equal rates claimants and their competitors were similarly situated; (3) the lease rates were an important expense factor in the production costs of claimants and their competitors; and (4) the rates imposed by defendants were unequal and caused substantial impairment of competition by claimants in the sale of food processed on defendants' machinery.

That all of the facts as above stated were found by the jury is established by the special and general verdicts. That such facts were reasonably found and warranted by the evidence appears beyond question since essentially the same facts were found from substantially the

same evidence by the Federal Trade Commission (In re Grand Caillou Packing Co., et al., F.T.C. #7887, June 4, 1964) and by the Fifth Circuit in affirming the Commission findings and decision (LaPeyre v. Federal Trade Commission, 366 F.2d 117, Fifth Circuit, Sept. 13, 1966). Whatever other effect or authority might be given those decisions in the present case, they amply demonstrate the sufficiency of the evidence to support the facts found by the jury.

From such facts the jury might reasonably have reached the conclusion implicit in their verdicts that the defendants unlawfully exceeded the limits of their patent monopoly rights by unreasonably and substantially suppressing competition, thereby causing monopolization in violation of Section 2 of the Sherman Act.

While no decision can be cited as direct authority for the ultimate conclusion just stated, there is no decision cited or found which specifically or by necessary inference is authority to the contrary. The stated conclusion reasonably follows from the facts on which it is based and is in harmony with the philosophy of antitrust law and the trend of decisions interpreting that law.[1]

All contentions urged by defendants in support of their motions for judgment n. o. v. and for new trial have been fully and closely considered. In this memorandum decision only those contentions will be discussed which appear to warrant specific comment.

Defendants contend that because price discrimination is the specific subject of the Robinson Patman Amendment to the Clayton Act, 15 U.S.C. § 13, such conduct is not covered by the Sherman Act. Also it is argued that the Amendment does not apply to lease rates and therefore a discriminatory lease rate cannot be a violation of either the Clayton Act or the Sherman Act. There is no intimation in Robinson Patman that it is the sole and exclusive antitrust law applicable to price discrimination, or is intended to be a limitation on the Sherman Act, or that it removes any antitrust conduct from the scope of the Sherman Act. Robinson Patman prohibits initial-stage price discrimination which, if continued or extended, may become a Sherman Act violation. Even though a particular price discrimination may not fall within the specific prohibitions of Robinson Patman, that circumstance neither directly nor by reasonable inference precludes price or lease rate discrimination from being a cause of a Sherman Act violation when all other elements of such violation are established.

The damages sought by claimants were related to lease rates but recovery solely because of the lease rates, even if found discriminatory, was not permitted under the instructions. The jury was instructed to consider all activities of defendants disclosed by the evidence in determining whether in fact a Section 2 Sherman Act violation had been established. The instructions specifically stated and in several contexts emphasized to the jury that recovery could not be based merely upon a

1. United States v. E. I. Du Pont De Nemours & Co., 118 F.Supp. 41, 214–217 (D.Del.1953), aff'd 351 U.S. 377, 76 S.Ct. 994, 100 L.Ed. 1264 (1956); Lorain Journal Co. v. United States, 342 U.S. 143, 72 S.Ct. 181, 96 L.Ed. 162 (1951); Kiefer-Stewart Co. v. Joseph E. Seagram & Sons, 340 U.S. 211, 71 S.Ct. 259, 95 L.Ed. 219 (1951); American Tobacco Co. v. United States, 328 U.S. 781, 66 S.Ct. 1125, 90 L.Ed. 1575 (1946); Associated Press v. United States, 326 U.S. 1, 65 S.Ct. 1416, 89 L.Ed. 2013 (1945); United States v. Crescent Amusement Co., 323 U.S. 173, 65 S.Ct. 254, 89 L.Ed. 160 (1944); Mercoid Corp. v. Mid-Continent Inv. Co., 320 U.S. 661, 64 S.Ct. 268, 88 L.Ed. 376 (1944); United States v. Masonite Corp., 316 U.S. 265, 62 S.Ct. 1070, 86 L.Ed. 1461 (1942); Fashion Originators' Guild of America v. Federal Trade Comm'n, 312 U.S. 457, 61 S.Ct. 703, 85 L.Ed. 949 (1941); Motion Picture Patents Co. v. Universal Film Mfg. Co., 243 U.S. 502, 515, 37 S.Ct. 416, 61 L.Ed. 871 (1917); Standard Oil Co. of New Jersey v. United States, 221 U.S. 1, 31 S.Ct. 502, 55 L.Ed. 619 (1911); United States v. 20th Century Fox Film Corp., 137 F. Supp. 78, 79 (S.D.Cal.1956).

finding of discriminatory lease rates. Also, the essential elements of recovery were several times reiterated in the instructions, including particularly the necessity of proof of an *unreasonable* impairment or suppression of competition as a basis of recovery under Section 2 of the Sherman Act.

Defendants also assert that discriminatory practices by a single firm not acting in concert with others does not constitute a Sherman Act violation, citing language in the opinion in Hanover Shoe, Inc. v. United Shoe Machinery Corp., 245 F.Supp. 258, 287 (M.D.Pa.1965). The precise question raised by defendants' contention was not directly presented in the cited case and the language of the District Court opinion on which defendants rely was not necessary to the decision in that case.

Defendants rely upon two Ninth Circuit decisions as indicating that single-firm discriminatory practices cannot effect a violation of Section 2 of the Sherman Act: Chorak v. RKO Radio Pictures, 196 F.2d 225 (1952), cert. den. 344 U.S. 887, 73 S.Ct. 186, 97 L.Ed. 686; and Fanchon & Marco, Inc. v. Paramount Pictures, 215 F.2d 167 (1954), cert. den. 348 U.S. 912, 75 S.Ct. 293, 99 L.Ed. 715. Both of those cases involved alleged discrimination by a producer or distributor of motion pictures in granting preferential release of films ("clearances") to particular exhibitors. As *Chorak* emphasizes, it is a practical impossibility for distributors to release identical films to all exhibitors at the same time. This is the crucial factor which clearly and vitally distinguishes the film distribution cases from the present case in which such factor is not present in any manner or to any degree. The practical business necessities of producers and distributors in the particular referred to is the basis for holding *reasonable* preference (dis-

crimination) among exhibitors legally justifiable in the distribution of films. In the present case there was no evidence of any reasonable business necessity for defendants' discriminatory rates and by the verdicts the jury so found. Everything stated in the *Chorak* and *Fanchon & Marco* opinions is said in the light of and directed to the particular situation applicable to the distribution of films. In so far as the question under consideration is concerned there is no statement or intimation in any of the film distribution opinions that they are applicable beyond that particular type of case.

■ There is no clear authority to support, and the philosophy of recent antitrust decisions is against, defendants' contention that single-firm violation of Section 2 of the Sherman Act cannot be based on unreasonably discriminatory lease rates when all other requirements in proof of such a violation are fulfilled.

■ Defendants say they only manufacture, sell and lease shrimp processing machinery and are not engaged in the business of either processing shrimp or distributing canned shrimp in the market for that commodity. Because of these circumstances defendants contend the processing machinery market is the only market "relevant" to a Sherman Act recovery against defendants and therefore claimants cannot recover in this litigation for any damages sustained because of the suppression or restriction of claimants' ability to compete in the market for canned shrimp. In effect, defendants argue that claimants cannot recover even if defendants violated the Sherman Act in the leasing of their processing machinery and such violation proximately caused injury and damage to claimants by reason of suppressing claimants' ability to compete in the market for canned shrimp. The decisions cited in support of this contention are noted below.[2] None of the

2. United States v. E. I. Du Pont De Nemours & Co., 351 U.S. 377, 76 S.Ct. 994, 100 L.Ed. 1264 (1956); Technical Tape Corp. v. Minnesota Mining & Mfg. Co., 247 F.2d 343 (2 Cir. 1957), cert. den. 355 U.S. 952, 78 S.Ct. 537, 2 L.Ed.2d 529 (1958); Dictograph Products, Inc. v. Federal Trade Comm'n, 217 F.2d 821 (2nd Cir. 1954); United States v. Aluminum Co. of America, 148 F.2d 416 (2nd Cir. 1945); Hanover Shoe, Inc. v. United Shoe Machinery Corp., 245 F.Supp.

opinions purports to rule directly and specifically as contended for by defendants. Some of the opinions contain language which lends inferential support to defendants' contention if considered apart from the particular circumstances of the case in which the language was used and out of the context in which defendants' contention is made in the present case. Otherwise, this court does not consider defendants' contention supported by any of the cited cases or by all taken together. On the other hand, a recent (April, 1966) decision of the Fourth Circuit, South Carolina Council of Milk Producers, Inc. v. Newton, 360 F.2d 414, expresses views as to proximate cause which this court considers applicable to the question posed by defendants' contention in this case. The essence of that decision on the present point is stated:

> "If a plaintiff can show himself within the sector of the economy in which the violation threatened a breakdown of competitive conditions and that he was proximately injured thereby, then he has standing to sue under section 4 [of the Clayton Act] * * *

> " 'The statute does not confine its protection to consumers, or to purchasers, or to competitors, or to sellers. Nor does it immunize the outlawed acts because they are done by any of these * * * The [Sherman] Act is comprehensive in its terms and coverage, protecting all who are made victims of the forbidden practices by whomever they may be perpetrated. * * * ' "

Other language in the same opinion and the below-noted decisions [3] support the holding of this court that recovery by claimants against defendants may be had upon the finding by the jury that defendants' violation of Section 2 of the Sherman Act in the leasing of processing machinery proximately caused injury and damage to claimants in preventing or restricting them in competing in the market for processed and canned shrimp.

■ Defendants contend that judgment n. o. v. must be granted against Crown Packers since that claimant was merely working as a processor on a cost-plus basis and did not itself engage in the marketing of shrimp and therefore suffered no damage. Rule 17(a) Civ.R.P. provides that " * * * a party with whom or in whose name a contract has been made for the benefit of another * * * may sue in his own name without joining with him the party for whose benefit the action is brought." It is clear Crown Packers comes within the rule and that, although acting on a cost-plus basis, its contracts with defendants for machinery rental were made for the benefit of Crown Packers.

■ Defendants' contention that judgment for claimant Halibut Producers Cooperative should be limited to damages based on machinery rental charges paid to defendants for the peeling of shrimp sold in the canned shrimp market is also without merit. Halibut Producers Cooperative claimed it was required to discontinue canning shrimp because of defendants' discriminatory lease rates and at the suggestion of defendants entered the frozen shrimp market in an attempt to stay in the shrimp processing business. There was substantial evidence in the case to support this contention (Tr. 3673–3677) which raised a fact issue resolved against defendants by the jury verdict in favor of Halibut Producers Cooperative.

■ Defendants also contend there is an inconsistency in the answers to ques-

258 (M.D.Pa.1965); United States v. United States Shoe Machinery Corp., 110 F. Supp. 295 (D.Mass.1953), aff'd per curiam, 347 U.S. 521, 74 S.Ct. 699, 98 L.Ed. 910 (1954); United States v. Grinnell Corp., 384 U.S. 563, 86 S.Ct. 1698, 16 L. Ed.2d 778 (1966).

3. Mandeville Island Farms, Inc. v. American Crystal Sugar Co., 334 U.S. 219, 68 S.Ct. 996, 92 L.Ed. 1328 (1948); Socony-Vacuum Oil Co., Inc. v. United States, 310 U.S. 150, 60 S.Ct. 811, 84 L.Ed. 1129 (1940); Conference of Studio Unions v. Loew's Inc., 193 F.2d 51, 54–55, (9th Cir. 1951); See also at p. 363, Karseal Corp. v. Richfield Oil Corp., 221 F.2d 358 (9th Cir. 1955).

tions #3 and #4 of the special verdict in that the jury found monopolization in excess of lawful patent monopoly in answer to question #3, but found there was no intent to monopolize in answer to question #4. When the several essential issues submitted to the jury as to each possible basis of recovery by claimants and all of the instructions under which those issues were determined by the jury are fully considered and kept in mind, it is perfectly clear that question #4 referred only to the element of specific intent essential to establish an attempt to monopolize, one of the several possible bases of recovery by claimants.

The court remarked during argument on the post-verdict motions, " * * * it seems incredible to me that anyone could have understood interrogatory #4 to be related to anything excepting an attempt as defined in the court's instructions." The jury were instructed:

"*Attempt to monopolize,* as related to this case includes two essential elements: (1) a specific intention or purpose to acquire monopoly power in excess of lawful patent monopoly; and (2) the adoption of one or more alleged methods substantially furthering that specific purpose. To establish that a person had specific purpose and intention to monopolize, it must be shown by a preponderance of evidence that such person had actual knowledge that actions taken by him would tend to cause monopolization and that such person by such actions consciously desired to accomplish such monopolization."

\* \* \* \* \* \*

"*Purpose* and *intention,* as used in defining and discussing attempt to monopolize, mean that a person alleged to have made such attempt must be proven to have taken actions with the specific objective of monopolizing in mind and with the conscious desire that his actions will enable him to monopolize.

"Other than as just stated, if a person voluntarily takes actions which in fact result in a violation of the antitrust laws, such person is chargeable with antitrust violation as to civil claims for damages of the type asserted in the present case, whether or not such person had either purpose, intention, intent or knowledge that his actions would result in violation of the antitrust laws."

Although counsel were given drafts of the instructions and the verdict forms and invited to submit suggestions as to their form, language and substance, the court received little assistance from counsel in that respect. The special verdicts required the jury to report its findings as to the essential facts pertaining to each of the several possible bases of recovery asserted by claimants. The several parts of the special verdict form and the general verdict forms were prepared as an interrelated series of questions to be determined by the jury. When the answers of the jury to those questions are read in their relation to each other and to the instructions on which they were based, there can be no reasonable doubt that the question concerning intent in special interrogatory #4 dealt only with whether defendants had specifically intended an attempt to monopolize. The answer to that question had no necessary bearing on whether, specifically intended or not, defendants actually accomplished monopolization which was the question presented in interrogatory #3. Fair analysis of all of the verdicts makes it certain the jury: (1) found there was no combination, thus precluding either a Section 1 violation or a Section 2 violation based on combination; (2) found no specific intent to monopolize, thus precluding a violation based on attempt to monopolize; and (3) found a general intent by defendants to voluntarily and knowingly do those things which were found to result in monopolization in excess of patent monopoly.

■ Although defendants urge a variety of contentions in support of their motion for new trial, the basic question presented by that motion is whether the following instruction is erroneous:

"Lawful patent monopoly does not include the right to charge discrimina-

tory rates as previously defined in these instructions or to attach conditions to the use of patented machinery which have the purpose or effect of unreasonably or unlawfully permitting a combination to restrain interstate trade or commerce in a product processed or manufactured by the patented machinery."

Defendants' claim of error pertains to the first part of the quoted sentence, i. e., "Lawful patent monopoly does not include the right to charge discriminatory rates *as previously defined in these instructions * * *.*" In their argument defendants fail to give effect to the very definition specifically referred to as *underscored* above. A part of that definition stated:

"Therefore, if you find from the evidence and under the court's instructions the rate was not discriminatory, or if discriminatory, neither the cause nor the result of an antitrust violation, your verdict must be for the defendants as to all claims."

When the clause objected to is read in context with the sentence in which it appears and with all other instructions, it is clear beyond question that the jury was instructed that recovery for any claimant could only be allowed if defendants' lease rate was found in fact to be discriminatory *and* caused by or the result of an antitrust violation. In the balance of the sentence following the phrase defendants object to, the jury was told a patent monopoly could not be used *by a combination* to restrain trade or commerce in products manufactured on the patented machinery. The italicized words make it plain that this portion of the instruction referred to conduct by a combination. Since the jury found there was no combination, even if the phrase complained of was incorrect defendants could not have been harmed by it.

Fed.Civ.R. #51 provides for submission of requested instructions stating the views of counsel as to the law on fact issues which are supported by evidence and which counsel deem of particular importance to the contentions they expect to present to the court and jury. The court has a right to expect such assistance from counsel in the preparation of instructions. In the present case few, if any, of the numerous requested instructions submitted by counsel contained complete, correct and fair statements of the law applicable to the numerous principles of law on which the jury obviously had to be instructed. The failure of exceptionally able and experienced counsel to present their conception of the law as to the principal issues by well stated requested instructions should not be viewed with favor in cases involving such extraordinarily complicated and unusual fact and law issues as were involved in this litigation. If by hindsight, it might now appear that a phase of an issue mentioned in a requested instruction was not covered in the given instructions as specifically or emphatically as might seem desirable, this is more fairly chargeable to counsel than to the court. In any event it would not require new trial unless the claimed error was clearly prejudicial. It does not appear defendants were or could have been prejudiced by any asserted error urged in support of defendants' motion for new trial.

■ Refusal of only one instruction requested by defendants is claimed as error, which indicates all other requests of defendants were covered to their satisfaction in the instructions given to the jury. The refused request reads:

"INSTRUCTION NO. B 1

"You are instructed that you cannot find that either monopolization or restraint of trade constituting an antitrust violation were committed by the Laitram Corporation or The Peelers Company or Grand Caillou Packing Company, Inc., if you find that the lease rate utilized for the defendants' patented shrimp peeling machinery from 1956 to May 1, 1963, was equal to a numerical expression of a single, uniform charge for each shrimp peeled on the machinery, regardless of the size of each shrimp."

If considered as an abstract statement unrelated to the evidence in the case, this requested instruction is far from being clear, uncomplicated and understandable. However, there was no categorical credible evidence in the record to sustain a finding that the yield for each Gulf packer was 50% of the yield for each Northwest packer. Also, the request fails to take into account the fact the jury was entitled to consider all circumstances shown by evidence which were involved in setting the rates. The subject matter of the requested instruction, so far as supported by evidence, was fully covered in the instructions given the jury and defendants' counsel were not precluded from arguing to the jury the contention stated in their requested instruction.

■ Defendants complain of the supplemental instruction given during the deliberations of the jury in response to request of the jury therefor. The appropriateness and the perception of the jury's inquiry indicate discriminating care in considering and applying the instructions. Promptly upon receipt of the inquiry it was reported to counsel who thereupon met in lengthy conference with the court. Counsel were given every opportunity to participate in preparation of a response to the jury and to state their views concerning the form and content of the response. Defendants' counsel were particularly invited to suggest any particulars which should be included in the response but they did not then seek inclusion of those items the omission of which they now assert as error. The conference was not reported and the taking of exceptions was not required. However, the conference did occur and in the presence of counsel a proposed supplemental instruction in response to the jury's request was discussed in detail, drafted and finally redrafted in the form given to the jury.

■ Defendants' final asserted ground for new trial pertains to a comment by claimants' counsel during final argument to the jury. Assuming the comment was improper, it could not have improperly influenced the jury to the prejudice of claimants.

The court instructed the jury:

"The statements of attorneys in the case made during the trial and in their arguments are not evidence nor proof of any fact in issue, and should be disregarded by you unless the statements are based on your own recollection of what the evidence is, and in accord with your own judgment as to the credibility, value and significance of the evidence."

Also:

"Your verdict must be based exclusively upon the evidence presented and received during the course of the trial * * * You must not discuss or consider anything but such evidence."

Also as to the subject matter of the comment asserted as prejudicial argument, the court instructed the jury:

"The fact that the Northwest lease charges were reduced as of May, 1963, in and of itself, is not to be taken as any evidence or proof that the previous lease rate was discriminatory or unlawful in any respect."

The jury was constantly alert and attentive during an involved and lengthy trial and its perceptive request for further instruction and the discernment indicated in finding facts as directed in the special verdict indicate the jury deliberated on the case with utmost care and faithful adherence to the instructions of the court. The court has not the slightest doubt the jury scrupulously followed the above-quoted instructions as well as all others. If so, the asserted improper comment of counsel could not have had the slightest prejudicial effect. The court is confident such was the fact of the matter.

On full consideration of all contentions by defendants in support of their motions for judgment n. o. v. and for new trial each and both are found without substantial merit and are hereby denied.

■ Claimants' motion that the judgment upon the verdicts in Cause #2797

be applicable to and run against Laitram Corporation has been fully considered on the briefs upon which it was submitted.

It is undisputed that Laitram Corporation is the successor to the rights and liabilities of the Peelers Company. Laitram is a named party in Cause #2350 (Pretrial Order Admitted Fact #5), and as such was fully and properly before the court in Cause #2350. That cause and Cause #2797 were consolidated for trial with the same jury; thus Laitram was a direct participant in the litigation of claims, contentions and issues in Cause #2797 identical to those in Cause #2350. The ownership of Peelers and Laitram is substantially the same. The principal owners of Laitram testified as witnesses and were present in person throughout all or most of the trial proceedings. Peelers and Laitram were represented by the same counsel who vigorously participated in all proceedings in both Cause #2350 and Cause #2797.

In these circumstances, to now require service of process and further proceedings as to Laitram would give unreasonable and unnecessary obeisance to formality. In a substantially similar situation such formality was held essentially useless and therefore unnecessary in Hirsch v. Bruchhausen, 284 F.2d 783 (2nd Cir. 1960). That decision fully supports the granting of claimants' motion in the present case. Accordingly, it is hereby so ordered.

In Cause #2350 plaintiff seeks relief for alleged infringement by the defendants in that action of certain patents on shrimp peeling machinery owned by plaintiff. Defendants' challenge to the validity of the patents previously has been tried in this court and determined in favor of plaintiff. Kaakinen v. Peelers Co., 9 Cir., 301 F.2d 170, 171. The sole issue now presented is whether defendants' affirmative defense of patent misuse has been sustained on the evidence and record before the court. Nonjury determination of that issue has been stipulated.

Plaintiff in Cause #2350 may be estopped to deny misuse of the patents because the same issue has been determined against plaintiff by the United States District Court for the District of Alaska in Laitram Corporation v. King Crab, Inc., 244 F.Supp. 9, 245 F.Supp. 1019. In that case, after extended trial, the court held the patents had been misused in the identical particulars at issue in the present case. In the cited case it was held that the patent holder had purged itself of the misuse and a permanent injunction against further misuse was granted but recovery of damages was denied.

On the record in the present case it is found in fact and law that the charging by plaintiff of rates unreasonably and unfairly discriminating between lessees of the patented machinery constituted a patent misuse during the period such rates were applied. Accordingly, no damages sustained during such period may be recovered by plaintiff. Incidentally, it should be noted that while damages are discussed in plaintiff's brief no demand for damages was stated in the complaint or in the pretrial order.

The evidence shows plaintiff discontinued its discriminatory rate practices in May, 1963. Having purged itself of misuse as of that date, plaintiff is entitled to an injunction restraining defendants from infringement of plaintiff's patents after May 31, 1963 continuing in effect until further order of this court.

It is so ordered. Findings of Fact, Conclusions of Law and a Decree in accordance with this ruling may be presented at the convenience of counsel.

Allowance of attorneys' fees pursuant to Section 7 of the Sherman Act has been submitted for determination by the court upon affidavits and memoranda.

Upon careful review of all circumstances of the present case relating to the several factors proper to be considered in fixing attorneys' fees in this type of case, the court has concluded and hereby finds the sum of $150,000 is a fair and reasonable amount to be allowed as attorneys' fees and awarded claimants as recoverable costs of suit. It is so ordered.