HONNAH B. STREIFFER, Testamentary Executrix of the Succession of Saul Streiffer, Plaintiff,

v.

SEAFARERS SEA CHEST CORPORATION and Seafarers International Union of North America, Atlantic and Gulf District, Defendants.

Civ. A. No. 6548.

United States District Court
E. D. Louisiana,
New Orleans Division.

May 22, 1958.

**604**

Stahl & Sear, Morey L. Sear, Kullman & Lang, Richard C. Keenan, New Orleans, La., for plaintiff.

Dodd, Hirsch, Barker & Meunier, Wilfred H. Boudreaux, New Orleans, La., for defendants.

WRIGHT, District Judge.

Plaintiff, a purveyor of "slop chest"[1] supplies at the Port of New Orleans, seeks treble damages under Section 4 of the Clayton Act[2] for alleged violations of the antitrust laws by the defendants. Defendant Seafarers International Union, hereafter referred to as "the Union," is one of the several unions in the maritime field. Its members are unlicensed seamen employed aboard approximately 400 vessels owned and operated by approximately 100 American flag steamship companies. The other defendant, Seafarers Sea Chest Corporation, hereafter referred to as "the Corporation," was organized by the Union in 1951 for the purpose of entering the slop chest supply business. This Corporation is wholly owned, managed and controlled by the Union, which receives the profits.

It is alleged, and taken as true for purposes of this motion, that, from 1951 until the filing of this complaint on March 20, 1957, the Union has conspired with the Corporation to restrain and monopolize the slop chest supply business by using the Union's collective bargaining power to compel ship owners and operators to purchase their slop chest supplies from the Corporation, to the exclusion of the plaintiff and all other independent dealers. The plaintiff claims damages from this unlawful combination for the entire period from 1951 to 1957. The defendants have moved to dismiss for failure to state a claim, contending, among other things, that plaintiff's cause or causes of action accrued before the period of limitation applicable to the present suit and are now barred.

It was determined by this Court, in Delta Theaters v. Paramount Pictures, 158 F.Supp. 644, that the Louisiana statute of limitations to be applied in private antitrust suits is LSA–C.C. Art. 3536, which provides a one-year limit for actions "resulting from offenses or quasi offenses." The effect of this statute on the present case is mitigated by the fact that on August 20, 1954 the United States filed a complaint[3] against these same defendants, alleging violations of the antitrust laws. By virtue of 15 U.S.C.A. § 16, any cause of action then existing was preserved during the pendency of the government action. During the course of those proceedings, on July 7, 1955, 15 U.S.C.A. § 16 was amended to extend the period of suspension of limitations for one year beyond the time that the Government suit should cease to pend. The Government action referred to above ceased to pend on March 20, 1956 when a consent decree was entered enjoining those defendants from engaging in the type of activity complained of in the present suit. Since the present complaint was filed on March 20, 1957, the plaintiff is now entitled to go to trial to prove any damages it has suffered from the defendants' alleged unlawful conduct at any time between August 20, 1953, or one year prior to the filing of the Government complaint, and March 20, 1957.

---

1. The "slop chest" is the traditional name for the ship store each vessel is required to maintain to provide members of the crew with clothing, blankets, seamen's gear, tobacco and other incidentals.

2. 15 U.S.C.A. § 15.

3. United States v. Seafarers Sea Chest Corp., Civil Action 14,674, E.D.N.Y., 1954.

The defendants agree that plaintiff is still entitled to sue on any cause of action which accrued after August 20, 1953, but they insist that all of plaintiff's causes of action accrued before that time. Steiner v. 20th Century-Fox Film Corporation, 9 Cir., 232 F.2d 190, is cited as authority for the proposition that in conspiracy cases a cause of action accrues and the statute of limitations begins to run at the time that each individual "overt act" is committed in pursuance of the purposes of the conspiracy. Defendants assert that the record shows that sometime prior to July, 1953, all ship owners and operators employing Union members had ceased doing business with the plaintiff. From this it is inferred that all the "overt acts" directed against this plaintiff must have occurred before that time. Defendants' conclusion is that all of plaintiff's causes of action accrued more than a year before the Government suit was instituted, and therefore none could have been preserved by the suspension statute.

For their factual assertions defendants rely on the deposition of the manager of the plaintiff's business. A careful reading of that document discloses a series of events not fully reflected in defendants' brief summary of the record. It appears that in March, 1953, plaintiff's business with most Union-organized vessels fell off abruptly as a result of Union pressure, but in a few cases the refusal to deal may have come as much as six months later. For about a year following March, 1953, the plaintiff continued to deliver merchandise to these same vessels but the bill was sent to the Union's Corporation which re-billed the ship owners. In March, 1954, plaintiff's business from these vessels was cut off altogether when the Corporation ceased to deal with the plaintiff. Thereafter, the plaintiff continued to solicit business from Union-organized vessels, but without success. Since there are many vessels calling at the Port of New Orleans other than those manned by Union members, the plaintiff was able to continue in business throughout the period in suit. After the consent decree in the Government suit was entered in 1956, plaintiff recovered some of the customers cut off by Union pressure in 1953.

■ Defendants' suggestion that, when the monopoly was complete as to ships manned by its members, no further overt acts were committed in furtherance of the conspiracy, will not bear analysis. Plaintiff, during the period it was barred from supplying ships manned by the Union, continued in business supplying other vessels and standing ready to supply the Union-manned vessels. To continue its monopoly, the Union was required to continue its coercion of the ship's owners. Obviously, this application of coercion took the form of a multitude of overt acts, not the least of which was the continuing enforcement of the monopoly provisions of the bargaining agreement. However, it is unnecessary to attempt the hopeless task of trying to divide the activities of the defendants, directed toward continuing the monopoly, into a series of overt acts, each causing particular items of damage and giving rise to separate causes of action. The difficulties in applying the rule that the cause of action created by 15 U.S.C.A. § 15 accrues on the occurrence of an overt act were discussed by this Court in Delta Theaters v. Paramount Pictures, supra. The rule was rejected there as being in conflict with the terms of the statute itself which predicates the existence of the cause of action on the occurrence of damage without regard to the time when the proximate cause of such damage was set in motion.

In Steiner v. 20th Century-Fox Film Corporation, supra, relied on by the defendant, this overt act rule was justified by analogizing the antitrust suit to an ordinary tort action for a personal injury, where all damage subsequently appearing may be attributed to a single blow and must be recovered in a single action.[4]

4. "In a continuing conspiracy causing continuing damage without further overt acts, the statute of limitations runs, as we have noted, from the time the blow

However, the damages inflicted by a conspiracy in restraint of trade may arise from the cumulative effect of a great variety of business devices among which it is impossible to apportion each item of financial loss. Moreover, in the case of a continuing business conspiracy, the plaintiff may bring his action only for such damages as are already apparent, for the incidence of future damages may depend on unpredictable factors. The conspiracy may cease, or a change in the business climate may render its efforts harmless to the plaintiff, or the plaintiff may voluntarily abandon his enterprise.

■ Under these circumstances it is more appropriate to analogize the antitrust suit to actions for injuries to real property,[5] and, in particular, to actions arising out of a continuing, but abatable nuisance,[6] where the incidence of continuing damage may depend on speculative factors, including the uncertain operation of the seasons. In such cases, and in antitrust cases,[7] the rule is that the cause of action accrues on the occurrence of actual damage, and successive damage gives rise to successive causes of action against which the statute of limitations will run as they accrue day by day.

Applying this rule to the present case, the defendants' motion to dismiss will be granted as to the period before August 20, 1953, but assuming the conspiracy alleged is shown to have existed, the plaintiff is entitled to an opportunity to prove any damages suffered therefrom between August 20, 1953 and March 20, 1957.

■ The defendants have also made an omnibus motion, stating numerous theories, to dismiss the complaint for failure to state a cause of action. The complaint alleges that the defendants have combined and conspired to restrain the slop chest supply business in violation of 15 U.S.C.A. § 1, and that the defendants have in fact monopolized that business in violation of 15 U.S.C.A. § 2. Proof of either violation would, of course, be sufficient to sustain plaintiff's claim for treble damages. Defendants, since they have foreclosed competitors, such as plaintiff, from a substantial slop chest market, make neither of the traditional antitrust defenses based on reasonableness of the restraint and relevant market.[8] Instead they rely primarily on the exceptions for labor unions carved out of the antitrust acts by Section 6 of the Clayton Act, 15 U.S.C.A. § 17, and Section 1 of the Norris-LaGuardia Act, 29 U.S.C.A. § 101. Preliminarily, they make other defenses which may be quickly disposed of.

■■ Defendants first contend that there was no conspiracy. They offer in support of this theory a bit of ingenuous sophistry to the effect that the Corporation, the Union and its members are but one entity, and that it cannot conspire with itself. Suffice it to say, first, that the combinations prohibited by 15 U.S.C.A. § 1 include a combination between a parent organization and its wholly owned subsidiary,[9] and, second, that an allegation of conspiracy is unnecessary to state a claim under 15 U.S.C.A. § 2. If, as the Union insists, the Corporation and the Union are to be treated as a single entity, then the Union has not only "participated" in monopolization, it has gone further and taken over the monopoly itself. Un-

---

which caused the damage was struck. Any further internal injury affects the problem of how much should be claimed in damages, not the problem of when the statute of limitations commences to run." Steiner v. 20th Century-Fox Film Corporation, supra, 232 F.2d at page 195.

5. See 34 Am.Jur. Limitation of Actions § 131.

6. See 39 Am.Jur. Nuisances § 141.

7. See Delta Theaters v. Paramount Pictures, supra, and cases cited therein.

8. Foreclosures of competitors from a substantial market is unlawful per se. International Salt Co. v. United States, 332 U.S. 392, 396, 68 S.Ct. 12, 92 L.Ed. 20.

9. Timken Roller Bearing Co. v. United States, 341 U.S. 593, 597–598, 71 S.Ct. 971, 95 L.Ed. 1199; see also Kiefer-Stewart Co. v. Joseph E. Seagram & Sons, 340 U.S. 211, 71 S.Ct. 259, 95 L.Ed. 219; Schine Chain Theatres, Inc., v. United States, 334 U.S. 110, 68 S.Ct. 947, 92 L.Ed. 1245.

der either theory, the Union has stepped beyond the limits of its immunity.

■■ Secondly, the defendants argue that the antitrust laws were intended only to protect the consuming public generally, and that in this case the only consumers are seamen who must themselves necessarily benefit from the monopolistic practices of their Union. The argument is without merit. Assuming that seamen neither need nor are entitled to the protection of the antitrust laws against their Union, it is settled that such protection extends not only to consumers but also to competitors such as the plaintiff here. Mandeville Island Farms, Inc., v. American Crystal Sugar Co., 334 U.S. 219, 235–236, 68 S.Ct. 996, 92 L.Ed. 1328.

■■ Thirdly, and most importantly, the Union pleads the immunity of a labor organization, under 15 U.S.C.A. § 17 and 29 U.S.C.A. §§ 52, 101, 104, 105, 113, from suit for violation of the antitrust laws. These provisions of the Clayton Act and the Norris-LaGuardia Act are to be read together in determining the scope of this immunity. United States v. Hutcheson, 312 U.S. 219, 61 S.Ct. 463, 85 L.Ed. 788. The sweeping dicta in Hutcheson might suggest that a union, acting in its own interest, is wholly exempt from the prohibitions of the antitrust laws. It is now clear, however, that this immunity extends only to cases which may properly be characterized as "labor disputes" and does not apply to controversies upon which the employer-employee relationship has no bearing. United States v. Employing Plasterers' Association, 347 U.S. 186, 190, 74 S.Ct. 452, 98 L.Ed. 618; Allen Bradley Co. v. Local Union No. 3, International Brotherhood of Electrical Workers, 325 U.S. 797, 808, 65 S.Ct. 1533, 89 L.Ed. 1939; Columbia River Packers Association v. Hinton, 315 U.S. 143, 147, 62 S.Ct. 520, 86 L.Ed. 750; cf. Gulf Coast Shrimpers and Oystermans Association v. United States, 5 Cir., 236 F.2d 658, 664. In the present cause, both the subject matter of the action and the capacity in which the Union has acted remove the case from the protected category of "labor disputes."

■ Here, the Union has gone into business, and the use of the Union name or Union funds, or the fact that the profits may inure to Union members does not make this a labor activity.[10] Assuming that the Union may properly, under its charter, engage in the business of selling slop chest supplies, it is, in that capacity, subject to the antitrust provisions applicable to other commercial entrepreneurs. "A business monopoly is no less such because a union participates, and such participation is a violation of the Act." Allen Bradley Co. v. Local Union No. 3, International Brotherhood of Electrical Workers, supra, 325 U.S. at page 811, 65 S.Ct. at page 1541; United States v. Employing Plasterers' Association, supra; Columbia River Packers Association v. Hinton, supra.

An even more serious objection to immunization of the Union's activity from the antitrust laws arises from the fact that the activity does not concern the employer-employee relationship. Assuming the price and quality of slop chest supplies might properly be the subject of collective bargaining, they are not involved herein. The allegations of the complaint set forth a dispute between two commercial enterprises as to which will profit by supplying a certain class of vessels. Although the seamen and their employers may be interested in the outcome of this litigation, this conflict over profits does not involve anything which the seamen, as employees, are entitled to demand from their employers as terms and conditions of employment. The profits at which the Union's activities were aimed were

---

10. In this connection it should be noted that 15 U.S.C.A. § 17 exempts from the antitrust laws only labor organizations "not having capital stock or conducted for profit."

not the employers' profits but those of independent businessmen outside the shipping trade. Moreover, the Union's object was not to reduce those profits but to divert them to Union coffers. As between the employers and employees, the terms of employment were unaffected. Under these circumstances, no "labor dispute" is involved herein, and these Union activities may properly be challenged under the antitrust laws. Allen Bradley Co. v. Local Union No. 3, International Brotherhood of Electrical Workers, supra; Columbia River Packers Association v. Hinton, supra.

■ Finally, the defendants urge that this case falls within the exclusive jurisdiction of the National Labor Relations Board since the facts alleged in the complaint might constitute an "unfair labor practice" under the Taft-Hartley Act.[11] This contention hardly merits discussion. The cease-and-desist orders authorized by the Taft-Hartley Act are not the exclusive remedies for acts constituting unfair labor practices, assuming that is what this case involves. The remedy here demanded is not injunction, but damages. And no one now seriously questions the Union's responsibility in damages via civil suit, in state or federal court, for unfair labor practices. See Benz v. Compania Naviera Hidalgo, 353 U.S. 138, 141, 77 S.Ct. 699, 1 L.Ed.2d 709; United Automobile, Aircraft and Agricultural Implement Workers of America v. Wisconsin Employment Relations Board, 351 U.S. 266, 272, 76 S.Ct. 794, 100 L.Ed. 1162; United States v. Green, 350 U.S. 415, 420, 76 S.Ct. 522, 100 L.Ed. 494.

Defendants' motion to dismiss the claim for damages suffered prior to August 20, 1953 is granted. Defendants' other motions to dismiss and for summary judgment are denied.

[11]. 29 U.S.C.A. § 141 et seq.