The **LAITRAM CORPORATION**, Plaintiff,

v.

**DEEPSOUTH PACKING COMPANY, Inc., Defendant.**

Civ. A. No. 67–861.

United States District Court
E. D. Louisiana,
New Orleans Division.

Jan. 26, 1968.

Louis B. Claverie, New Orleans, La., for plaintiff.

C. Emmett Pugh, New Orleans, La., Paul L. O'Brien, Washington, D. C., for defendant.

RUBIN, District Judge.

Laitram sued Deepsouth claiming infringement of its patents on a shrimp deveining machine [1] and a shrimp vein remover. [2] Deepsouth answered that Laitram's patents were invalid. Then it counterclaimed seeking a declaration that a third Laitram patent, on a machine for peeling shrimp, [3] was invalid. Laitram made a public dedication of the patent on the shrimp peeling machine. [4] Thereafter the following motions were filed:

(1) Laitram's motion for summary judgment dismissing as moot Deepsouth's counterclaim seeking a declaration of the invalidity of the patent for the shrimp peeling machine.

(2) Deepsouth's motion for summary judgment against Laitram based on laches and estoppel.

(3) Deepsouth's motion to amend its answer and counterclaim, seeking to drop the counterclaim relating to the shrimp peeling machine, and to add a counterclaim for violation of the antitrust laws.

Deepsouth's motion to amend its proposed amended answer and counterclaim to set forth the defense of estoppel urged in its motion for summary judgment.

Laitram opposes both of Deepsouth's motions to amend. It contends that the counterclaim is barred both by the doctrine of res judicata and by the statute of limitations.

The present suit is the latest (although it may unfortunately not be the last) in a course of litigation that has not yet run as long as Jarndyce versus Jarndyce, but has undoubtedly gone far beyond anything that even Mr. Dickens imagined in scope, cost and complexity. It will serve to make the issues clearer, and perhaps to demonstrate why the United States has more lawyers per capita than any other nation, [5] if we summarize what has gone before.

In 1947 Fernand S. Lapeyre and James M. Lapeyre obtained a patent on a machine to peel shrimp. They also obtained the issuance or control of patents on other machines that supplemented the shrimp peeler. These included a machine to clean the shrimp after they were peeled, a device to slit the shrimps' backs, one to remove the heads from raw shrimp, and a sorter to separate shrimp by sizes. By 1949, these machines had become commercially practicable and automation came to the shrimp processing industry. It was no longer necessary to rely upon hand labor to sort, peel or clean shrimp. The commercial development of these obviously valuable patents was undertaken by The Peelers Company (Peelers), a partnership. Laitram is its successor.

The better mouse trap may attract the world to its inventor's door; it also brings competitors to the neighborhood. At any rate, Peelers' machines soon had rivals. On November 25, 1957, Peelers sued Paul C. Skrmetta, other individual defendants, and Deepsouth, contending that they were infringing various patents on shrimp processing machinery (but not the ones involved here). [6] Among the is-

---

1. U.S. Patent 2,694,218.

2. U.S. Patent 2,825,927.

3. U.S. Patent 2,778,055.

4. The name used is the one used in the pleadings. The patent is not truly one for a machine to peel shrimp but is an apparatus for peeling shrimp that has practical utility only when used in conjunction with other patented devices.

5. M. Mayer, The Lawyers 13 (1966).

6. The patents involved in Civil Action 7294 were 2,637,065; 2,537,355; 2,574,-044; and 2,429,828. The same patents

sues raised in that suit was a counterclaim for antitrust violations filed on February 17, 1958. On March 28, 1967, the parties filed an agreement of compromise and settlement in the record of that proceeding. The settlement included an agreement by Deepsouth and the other defendants to dismiss the antitrust complaint with prejudice, and such a dismissal was in fact filed.

Laitram or its predecessors were in addition involved in the following groups of suits:

1. The Kaakinen Case. This was a patent infringement suit begun in the United States District Court for the Western District of Washington in February, 1958, against Edwin A. Kaakinen and the Kaakinen Fish Company, who were users of Skrmetta machines. The suit resulted in an injunction against violation of the patents involved in the Skrmetta suit. The injunction was affirmed on appeal by the Court of Appeals for the Ninth Circuit.[7]

2. The Federal Trade Commission Litigation. In May, 1960, the Federal Trade Commission issued a complaint under the provisions of Section 5 of the Federal Trade Commission Act[8] charging Peelers with engaging in various unfair methods of competition and unfair acts and practices. The Commission dismissed charges relative to monopolization, but found that Peelers had committed unfair acts by selling shrimp processing machines to foreign canners while maintaining a policy of leasing them to domestic canners, and by leasing machines at a substantially higher rate to canners in the Northwestern states than the rate charged lessees in the Gulf Coast area. This latter finding was af-

firmed by the Court of Appeals for the Fifth Circuit.[9]

3. The King Crab Case. On April 30, 1962, Peelers sued King Crab, Inc., a shrimp canner, in the United States District Court for the District of Alaska for infringement of its patents resulting from use by King Crab, Inc., of the Skrmetta machines. One of the defenses was a claim filed on May 21, 1962, that Peelers and Laitram had violated the antitrust laws. The court found no violation of the antitrust laws and issued an injunction.[10]

4. The Wendt Case. In October, 1958, Peelers sued various users of the Skrmetta peeling machines in the Western District of Washington for infringement of its patents resulting from use of these peeling machines. The antitrust issue was raised both as a defense to the action filed on September 27, 1960, and by a counterclaim filed on July 6, 1964. Ultimately an injunction was issued.[11]

5. The Crown Packers Case. In November, 1960, various lessees of the Peelers machines sued Peelers for violation of the antitrust laws in the United States District Court for the Western District of Washington. The jury found that Peelers had not attempted to monopolize any line of commerce and had not combined or conspired in any manner violative of the antitrust laws but had monopolized "in excess of lawful patent monopoly" by means of the peeling machine lease rate. Damages were awarded to the plaintiffs in the amount of over $2,080,000.[12] An appeal was taken from the judgment to the United States Court of Appeals for the Ninth Circuit. This appeal was dismissed by an agreement directing dismissal pursuant to an agree-

were involved in Civil Action 7436 against National Blowpipe and Manufacturing Co., Inc., which was consolidated with Civil Action 7294.

7. Kaakinen v. Peelers Company, 9 Cir., 1962, 301 F.2d 170.

8. 15 U.S.C.A. § 45.

9. LaPeyre v. F.T.C., 5 Cir., 1966, 366 F.2d 117.

10. The Laitram Corporation v. King Crab, Inc., D.C., 1965, 244 F.Supp. 9, 245 F.Supp. 1019.

11. Peelers Company v. Wendt, D.C., 1966, 260 F.Supp. 193.

12. Crown Packers, Inc. v. Lapeyre, D.C., 1966, 260 F.Supp. 193.

ment of settlement filed in the trial court in February, 1967, providing for the payment of $1,260,000, in equal payments over a period of six (6) years, without interest.

## OPPOSITION TO THE MOTION

Laitram may properly oppose Deepsouth's motion to amend on the grounds that the counterclaim to be asserted is barred by the statute of limitations and res judicata. It need not wait until the amendment is filed to urge a motion to dismiss. The authorities are in conflict on this point, and some courts think it is not their function on motion for leave to amend to pass on the sufficiency of the proposed pleading. "But," as Professor Moore points out, "if a complaint or an answer, as amended, would be subject to a motion to dismiss under Rule 12(b) (6) or to a motion to strike under Rule 12(f), as the case may be, it would be an idle move for the court to allow such amendment over the objection of the opposing party who, if correct, has merely to make a formal motion to dismiss or to strike after leave to amend is granted."[13] In pleading as in geometry the shortest distance between two points ought to be a straight line. There is no reason why the lack of merit in the proposed counterclaim cannot now be considered.[14]

## STATUTE OF LIMITATIONS

The antitrust counterclaim is a claim for treble damages for violation of the antitrust laws.[15] Laitram contends that the claim is barred by the statute of limitations, which provides that an action must be "commenced within four years after the cause of action accrued."[16]

The application of these deceptively simple words to the complex factual circumstances involved in antitrust litigation has occasioned many problems, and it is impossible to reconcile the results reached in all of the cases. A so-called "general rule" is stated in CCH, Trade Regulations Reporter ¶ 9141, as follows:

"[A] cause of action under the antitrust laws accrues when damage is sustained. But * * * this does not mean 'damages' in the sense of the measure of recovery, but rather an act or occurrence which impairs the economic position of the plaintiff. For example, if the loss of future profits or some other monetary loss is rendered inevitable by such act or occurrence, the cause of action is complete, and the statute of limitations begins to run."

Many of the cases support this so-called "general rule." For example, when a complaint is based on an illegal refusal to deal, some courts have concluded that the antitrust claim is barred by the statute of limitations if no act in violation of the antitrust laws has been shown to have occurred within the statutory period.[17] The same result has been reached where a conspiracy to monopolize has been alleged.[18] In the latter situation, the Court of Appeals for the Ninth Circuit concluded: "[T]he statute of limitations

---

13. 3 Moore's Federal Practice ¶ 15.08[4], p. 904.

14. See DeLuca v. Atlantic Refining Co., 2 Cir., 1949, 176 F.2d 421, 424 (L. Hand, C.J.); Pasos v. Pan American Airways, S.D.N.Y., 1952, 17 Fed.Rules Serv. 15a.-34, Case 1. Cf. Foman v. Davis, 1962, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed. 2d 222; Stephens v. Reed, 3 Cir., 1941, 121 F.2d 696, 699.

15. 15 U.S.C.A. § 15.

16. 15 U.S.C.A. § 15b, as added July 7, 1955, c. 283, § 1, 69 Stat. 283, to become effective January 7, 1956. Prior to that time, the period in which antitrust ac-tions had to be commenced was controlled by state law. However, the cases decided before the adoption of a federal statute of limitations have been considered because they do not appear to turn on the specific provisions of the state statutes involved.

17. Norman Tobacco & Candy Co. v. Gillette Safety Razor Co., N.D.Ala., D.C., 1960, 197 F.Supp. 333, aff'd, 5 Cir., 1961, 295 F.2d 362; Pastor v. American Telephone & Telegraph Co., S.D.N.Y., 1940, 76 F.Supp. 781, 784–785.

18. Steiner v. 20th Century-Fox Film Corporation, 9 Cir., 1956, 232 F.2d 190, 194–195.

runs * * * from the time the blow which caused the damage was struck. Any further internal injury affects the problem of how much should be claimed in damages, not the problem of when the statute of limitations commences to run." [19] Many other cases support the proposition that the statute commences to run when a defendant commits acts in violation of the antitrust laws rather than from the time the plaintiff suffers damages resulting from those acts. [20]

However, there are more exceptions than those necessary aphoristically to prove the "general rule." Some courts have concluded that, where the complaint alleges a monopoly or an attempt to monopolize, [21] or a conspiracy to violate the antitrust laws, [22] the cause of action accrues, and the statute of limitations begins to run, as damage to the injured party occurs. [23] Confronted with what they consider "the hopeless task of trying to divide the activities of the defendants, directed towards continuing [a] monopoly, into a series of overt acts, each causing particular items of damage and giving rise to separate causes of action," [24] these courts have construed the statute to predicate "the existence of [a] cause of action on the occurrence of damage without regard to the time when the proximate cause of such damage was set in motion," [25] and have analogized "the antitrust suit to actions for injuries to real property, and, in particular, to actions arising out of a continuing, but abatable nuisance, where the incidence of continuing damage may depend on speculative factors, including the uncertain operation of the seasons." [26]

The Court of Appeals for the Fifth Circuit apparently has rejected the view that the statute runs on each day's damage as it occurs without regard to when the act causing damage was committed. In Crummer Company v. Du Pont, 5 Cir., 1955, 223 F.2d 238, the court said that it was in full agreement with the appellees' theory [27] that " * * * while successive claims would arise out of successive unlawful acts and consequent damages, such claims would have to do, and be concerned with only such successive occurrences

19. Id.

20. Baldwin v. Loew's Incorporated, 7 Cir., 1963, 312 F.2d 387, 390–391; Fleischer v. A.A.P., Inc., S.D.N.Y., 1959, 180 F.Supp. 717, 723. See also Crummer Company v. DuPont, 5 Cir. 1955, 223 F.2d 238, 247–248; Sherman v. Goerlich's Inc., E.D.Mich., 1963, 238 F.Supp. 728, 730, aff'd, 6 Cir., 1965, 341 F.2d 988; Susser v. Carvel Corporation, S.D.N.Y., 1962, 206 F.Supp. 636, 651; Dovberg v. Dow Chemical Company, E.D.Pa., 1961, 195 F.Supp. 337, 343; Molinas v. National Basketball Association, S.D.N.Y., 1961, 190 F.Supp. 241, 243; Henis v. Compania Agricola De Guatemala, D.C.Del., 1953, 116 F. Supp. 223, 226; Park in Theatres v. Paramount-Richards Theatres, D.C.Del., 1950, 90 F.Supp. 727, 729; Mormand v. Universal Film Exchange, D.C.Mass., 1942, 43 F.Supp. 996, 1006–1007 (Wyzanski, D. J.), aff'd, 1 Cir., 1948, 172 F. 2d 37, 49.

21. Highland Supply Corp. v. Reynolds Metals Co., 8 Cir., 1964, 327 F.2d 725, 731–732.

22. Streiffer v. Seafarers Sea Chest Corporation, E.D.La., 1958, 162 F.Supp. 602, 605–606; Delta Theaters v. Paramount Pictures, E.D.La., 1958, 158 F.Supp. 644, 647–649, appeal dismissed, 5 Cir., 259 F.2d 563, on the ground that the decision of the district court was not a final decision and thus not appealable.

23. This approach appears to have originated in the following language found in opinion of the Third Circuit in Bluefields SS Co. v. United Fruit Co., 1917, 243 F. 1, 20; "The statute [of limitations] began to run when the cause of action arose, and the cause of action arose when the damage occurred. * * * " For a discussion of the implications of that case and its progeny see Steiner v. 20th Century-Fox Film Corporation, 9 Cir., 1956, 232 F.2d 190, 194–195. See generally Annot., 62 A.L.R.2d 1369, 1392, et seq. (1958).

24. Streiffer v. Seafarers Sea Chest Corporation, E.D.La., 1958, 162 F.Supp. 602, 605.

25. Id.

26. Id. at 606. (Footnotes omitted.)

27. 223 F.2d at 248.

and the damages and injuries caused by such acts, and such occurrences would not extend the period of limitation as to earlier acts done and injuries caused thereby." [28]

This case has been cited as supporting the "continuing tort" theory,[29] but it rejects that notion and predicates the running of the statute on both "successive occurrences and the damages and injuries caused by such acts," not merely upon damages occurring within the statutory period.[30] Moreover, in Norman Tobacco and Candy Co., Inc. v. Gillette Safety Razor Co., 5 Cir., 1961, 295 F.2d 362, presented with a refusal to deal that allegedly violated the antitrust laws, the Fifth Circuit spoke approvingly [31] of the district court's decision [32] rejecting the contention that the original refusal to deal was in the nature of a continuing tort and holding that the anti-trust claim was barred because no wrongful refusal to sell had been shown to have occurred during the statutory period.

These cases cannot be harmonized on the basis of the kind of antitrust violation involved, for it is difficult to conceive that Congress intended the statute of limitations to begin to run with each act in violation of the statute as to some sorts of antitrust abuse, but only to apply to the occurrence of damages within the statutory period with respect to other sorts of violation. The policy sought to be achieved by the treble damage provisions of the act, the suppression of acts in restraint of trade by private civil proceedings that act as ancillary enforcement measures, presumably would be better served by construing the statute to permit recovery for all damages occurring within four years of the filing of suit. But this construction would require distortion of the statutory requirement that the action must be commenced within four years after the cause of action accrued. These words might be ambiguous to the layman; they should speak with absolute clarity to the lawyer: they require that any suit be commenced within four years after it might first have been brought because that is when the cause of action "accrued." Failing that, here, as almost everywhere else in the law, the ancient wrong becomes irreparable in the courts and he who suffers long without acting is doomed to suffer forever. This, at any rate, seems to be the construction in this Circuit.

In this case, Deepsouth's general allegations with respect to antitrust violations are virtually identical to those made in other suits more than four years ago. It must be assumed that these allegations refer to the identical acts then sought to be proved. Therefore, unless the statute of limitations was tolled, or unless the commencement of the action is of itself an antitrust violation, the statute effectively blocks Deepsouth's path. However, if there is anything that the plaintiff is alleged to have done within four years be-

28. Id. at 247.

29. See Delta Theaters v. Paramount Pictures, E.D.La., 1958, 158 F.Supp. 644, 649 n. 20.

30. Some expressions in the court's opinion can be read in another light. The court said that the limitation began in 1941, injury was complete and the damage fully done in 1944, and therefore the 3 year statute would have finished running in 1947. This can be construed as suggesting the statute does not bar damages within the applicable reach of filing suit even when barred as a result of earlier acts. But the court later observes that limitations would have commenced to run no later than 1944, and I think the court was simply saying that 1947 was the latest possible date on which the statute could have run, even if the antitrust violations continued from 1941 to 1944. This interpretation of the Crummer decision is in accordance with the comments on that case in DeLaughter v. Borden Co., 5 Cir., 1966, 364 F.2d 624. DeLaughter itself is not applicable here for it deals with the interpretation of the Louisiana prescriptive statute. LSA:C.C. Article 3537, and with the specific terms of the Louisiana Orderly Milk Marketing Act, LSA–R.S. 40:940.1 et seq.

31. 295 F.2d at 363.

32. Norman Tobacco & Candy Co. v. Gillette Safety Razor Co., N.D.Ala., 1960, 197 F.Supp. 333 (Grooms, D.J.).

890

fore the attempt to file the counterclaim, other than the plaintiff's institution of this suit, or if there is any factor that would toll the statute other than the ones discussed in this opinion, this ruling is without prejudice to the defendant's right to assert a counterclaim or to seek other relief for such acts.

Deepsouth contends the Federal Trade Commission proceeding tolls the statute under the provisions of Section 5 of the Clayton Act, as amended,[33] which provides:

"Whenever any civil or criminal proceeding is instituted by the United States to prevent, restrain, or punish violations of any of the antitrust laws, * * * the running of the statute of limitations in respect of every private right of action arising under said laws and based in whole or in part on any matter complained of in said proceeding shall be suspended during the pendency thereof and for one year thereafter * * *."

In New Jersey Wood Finishing Company v. Minnesota Mining and Manufacturing Company,[34] the Court of Appeals for the Third Circuit analyzed the history of the statutory authority for institution of actions by the FTC and concluded that the commencement of a Federal Trade Commission proceeding for violation of Section 7 of the Clayton Act tolls the antitrust statute of limitations. The Court noted that the Federal Trade Commission has authority to file proceedings either under the Federal Trade Commission Act (for using unfair methods of competition or unfair or deceptive acts or practices)[35] or under the Clayton Act (for violations of Sections 2, 3, 7 and 8 of that act relating respectively to price discrimination, tying agreements, stock and asset acquisition, and interlocking directorates).[36] While recognizing that three recent decisions[37] had reached a result contrary to its own, the court noted that those decisions had "clearly overlooked the affirmative statutory distinction between FTC proceedings under the FTC Act and under the Clayton Act and that distinction's vital effect upon Section 4 and Section 5 of the Clayton Act * * *."[38]

The court's language makes it clear that it did not think that an FTC proceeding based only on the FTC Act would have the same result because that would be based on the use of unfair methods of competition or unfair or deceptive acts or practices, not on violation of the antitrust laws.[39] The same distinction was carefully and correctly drawn by Judge Lord in Y & Y Popcorn Supply Company v. ABC Vending Corporation[40] when he considered the effect of an FTC complaint bottomed on separate counts, one for violation of the Clayton Act (Count I) and the other for unfair methods of competition (Count II):

"There is likewise no question, at least in this Circuit, that as respects Count I, the FTC order is the product of a 'civil or criminal proceeding brought by or on behalf of the United States under the antitrust laws.' * * * On the other hand, the charges contained in

33. 15 U.S.C.A. § 16(b).

34. 1964, 332 F.2d 346, aff'd, 1965, 381 U.S. 311, 85 S.Ct. 1473, 14 L.Ed.2d 405.

35. 15 U.S.C.A. § 45.

36. 15 U.S.C.A. § 21.

37. See 332 F.2d at 359, n. 14: Highland Supply Corporation v. Reynolds Metals Company, E.D.Mo., 1963, 221 F.Supp. 15, rev'd in part, 8 Cir., 1964, 327 F.2d 725; Volasco Products Co. v. Lloyd A. Fry Roofing Company, E.D.Tenn., 1963, 223 F.Supp. 712; Farmington Dowel Products Co. v. Forster Mfg. Co., Inc., D.C.Me., 1963, 223 F.Supp. 967.

38. 332 F.2d at 359.

39. "The Sherman and Clayton Acts * * * are 'antitrust laws' within the meaning of Section 4 [of the Clayton Act]. Other acts are not, including for our purposes, the Federal Trade Commission Act." 332 F.2d at 350. Presumably the same conclusion should be reached as to what constitutes the "antitrust laws" for purposes of Section 5 of the Clayton Act, for "Section 5 is auxiliary to Section 4 * * *." 332 F.2d at 352.

40. E.D.Pa., 1967, 263 F.Supp. 709.

Count II stand on a different footing. Section 5 of the FTC Act, which was the asserted basis for liability in Count II, is not one of the 'antitrust laws.' * . * * Therefore, no use could be made of a degree entered pursuant to that count." [41]

■ Since the FTC proceeding against Peelers was for violation of Section 5 of the FTC Act, not for violation of one of the antitrust laws within the meaning of Section 5 of the Clayton Act, the FTC proceeding does not toll the running of the statute of limitations.

■ Moreover, the filing of the present suit does not of itself create a new cause of action. Deepsouth cites Kobe, Inc. v. Dempsey Pump Co.[42] as supporting its proposition that "the very institution of this present infringement action when considered with the entire monopolistic scheme shown to have preceded it * * * is the action from which the * * * damages flow * * *." But allowing consideration of acts that preceded this suit by more than four years would undermine the basic policy considerations that underlie statutes of limitation. "Where * * * the infringement suit and notices sent to the trade at the commencement of such suit are the sole cause of damage suffered by the claimant" we are told by a writer who is backed by ample authority,[43] "the courts have uniformly refused recovery of treble damages." [44] It is only where a patent infringement suit is part of a conspiracy in violation of the antitrust laws that it affords a cause of action for treble damages.[45]

■ The statute then appears to have run on the counterclaim, and, for this reason, the Court denies Deepsouth the right to amend its answer so as to assert it, without prejudice to the right to assert any claim for damages occasioned by an act of Laitram within the four year statutory period.

## RES JUDICATA

There is no need to put two strings on the bow, and it is supererogatory to decide whether the Court should refuse to permit the counterclaim to be filed because it is barred by the authority of the thing adjudged, that bar "neither sinister nor harsh * * * often * * * salutary, and, occasionally, merciful." [46]

## COUNTERCLAIM REGARDING VALIDITY OF THE PATENT FOR THE SHRIMP PEELING MACHINE

■ Laitram's dedication to the public of the patent for the shrimp peeling machine (2778055, referred to as 055) terminates all of its rights in that patent, just as if it had expired. It would therefore serve no purpose for this Court to pass upon the validity or invalidity of that patent.[47] Whether the patent was valid or invalid, Deepsouth has been unable to show any reason why the court's determination of the asserted invalidity of the patent before its dedication would be of any legal significance. Discussion of the patent therefore would not only be academic but it also would be beyond the jurisdiction of this Court, which may consider only cases and controversies.[48]

41. 263 F.Supp. at 711–712. (Citations omitted.)

42. 10 Cir., 1952, 198 F.2d 416.

43. E.g., International Visible Systems Corp. v. Remington-Rand, Inc., 6 Cir., 1933, 65 F.2d 540; Straus v. Victor Talking Machine Co., 2 Cir., 1924, 297 F. 791.

44. Note, 52 Colum.L.Rev. 936, 937 (1952).

45. See Clapper v. Original Tractor Cab Company, 7 Cir., 1959, 270 F.2d 616, 619, 623 for language supporting this inference. See also Dairy Foods, Inc. v. Dairy Maid Products Corp., 7 Cir., 1961, 297 F.2d 805.

46. Anderson v. Moorer, 5 Cir., 1967, 372 F.2d 747, 752.

47. See Robertson Rock Bit Co. v. Hughes Tool Co., 5 Cir., 1949, 176 F.2d 783, 792; Wilson v. Byron Jackson Co., 9 Cir., 1937, 93 F.2d 572, 574.

48. E.g., Aetna Life Insurance Co. of Hartford, Conn. v. Haworth, 1937, 300 U.S. 227, 57 S.Ct. 461, 81 L.Ed. 617; People of State of California v. San Pablo & T. R. Co., 1893, 149 U.S. 308, 13 S.Ct. 876, 37 L.Ed. 747.

## DEEPSOUTH'S MOTION FOR SUMMARY JUDGMENT BASED ON LACHES AND ESTOPPEL

■ As the material facts are disputed,[49] a summary judgment would obviously be improper.[50] Therefore the motion is denied without prejudice to Deepsouth's right to reassert the defenses of laches and estoppel in an appropriate manner at the appropriate time.

## MOTION FOR SEPARATE TRIAL

Deepsouth urges the Court to sever the issues raised by the defenses of laches and estoppel and to grant a separate trial of them. Rule 42(b) of the Federal Rules of Civil Procedure permits the Court to order a separate trial of any separate issue "in furtherance of convenience or to avoid prejudice, or when separate trials would be conducive to expedition and economy."

■ Laitram urges that the Court refuse a separate trial on the laches and estoppel issues because it has found no patent case in which this has been done and because a finding of laches will not foreclose a determination of the validity of the patents or an injunction against continued infringement.

While no case granting a separate trial on facts identical to this case has been found by the Court or cited by counsel, it is clear that separate trials have been granted in analogous situations, e. g., to determine the applicability of the statute of limitations in an antitrust suit,[51] to determine whether there has been estoppel by judgment in an antitrust suit,[52] to determine the question of laches in a copyright infringement suit [in a case also dealing with whether laches will bar both an accounting and an injunction in a copyright infringement action],[53] and this Court has frequently ordered separate trial of the issue of laches in admiralty matters.[54] Barron and Holtzoff's treatise on federal practice tells us, "A separate trial may be ordered of affirmative defenses, such as estoppel, res judicata, limitations or laches, statute of frauds, or release."[55] For, it notes, "If a separate trial of part of the issues may make unnecessary the trial of other issues it is only reasonable to follow the course which saves the time of the court and reduces the expenses of the parties."[56] Professor Moore agrees.[57] The Fifth Circuit has said in regard to granting a separate trial of an issue under Rule 42(b), "It is enough that there be on the record at the time a substantial issue of fact which, if determined in favor of defendant, will eliminate expense for all concerned without prejudicing the rights of the parties." Rossano v. Blue Plate Foods, Inc.[58]

---

49. Deepsouth's claim based on laches is that Laitram delayed unreasonably "in bringing the instant suit after at least five years of knowledge" and that this delay resulted in detriment to Deepsouth. Its estoppel contention is founded on alleged representations made by Laitram during settlement negotiations in the prior litigation to the effect that "Deepsouth * * * need not fear suit by Laitram * * * on the Skrmeta deveining machines because at worst a 'reasonable royalty' arrangement could be worked out." Laitram has filed affidavits controverting both of Deepsouth's claims.

50. E.g., Minnesota Mining and Mfg. Co. v. United States Rubber, 4 Cir., 1960, 279 F.2d 409, 415; Bros, Incorporated v. W. E. Grace Manufacturing Co., 5 Cir., 1958, 261 F.2d 428, 432–433; Fed. R.Civ.P. 56(c).

51. Momand v. Paramount Pictures Distributing Co., D.C.Mass., 1941, 36 F. Supp. 568, 1942, 43 F.Supp. 996.

52. Momand v. Paramount Pictures Distributing Co., D.C.Mass.1946, 6 F.R.D. 222.

53. The Seven-Up Company v. O-So Grape Co., S.D.Ill., 1959, 177 F.Supp. 91.

54. E.g., Dupre v. Employers Mutual Liability Insurance Company, Admiralty No. 7715 (May 26, 1967).

55. 2B Barron & Holtzoff (Wright ed.) § 944, pp. 200–201. (Footnotes omitted).

56. 2B Barron & Holtzoff (Wright ed.) § 943, p. 187. (Footnotes omitted).

57. 5 Moore's Federal Practice ¶ 42.03, pp. 1214–1217.

58. 5 Cir., 1963, 314 F.2d 174, 176.

Therefore, in any case in which a separate trial on either the laches or estoppel issue would eliminate the necessity of additional proceedings, it should be granted.

■ But a separate trial on laches should not be granted here, because separate trial of the issue of laches would not eliminate the need to try the basic question of validity of Laitram's patents. Even if laches on its part is established, it does not necessarily follow that Laitram should be denied an injunction against future infringement.[59]

■ However, it does appear that the holder of a patent may become estopped to assert the patent against a particular person and thereby prevented from enjoining that person's use of the patent.[60] The issues involved in the claim of estoppel can be tried in a matter of a day or, at most, two. The other issues in the suit would require three or four additional days to try. They would require many additional witnesses, and a development of far different testimony. Hence a separate trial of the issue of estoppel might avoid the necessity for trial of the much more involved questions of patent validity and infringement and would clearly be "conducive to expedition and economy."

Accordingly, the Court orders a separate trial of the issue of estoppel only.

For the reasons assigned:

(1) Laitram's motion for summary judgment is GRANTED with respect to Deepsouth's counterclaim seeking a declaration of the invalidity of the patent for the shrimp peeling machine (055).

(2) Deepsouth's motion for a summary judgment against Laitram based on laches and estoppel is DENIED, without prejudice.

(3) Deepsouth's motion to amend its answer and counterclaim so as to add a counterclaim for violation of the antitrust laws is DENIED.

(4) Deepsouth's motion to amend its proposed amended answer and counterclaim to set forth the defense of estoppel urged in its motion for summary judgment is denied because it is coupled with the counterclaim for violation of the antitrust laws. However, to the extent that it asserts only the defense of estoppel, the motion is granted, and the answer is amended to that extent only.

---

59. E.g., Shaffer v. Rector Well Equipment Co., 5 Cir., 1946, 155 F.2d 344, 347; Imperial Brass Mfg. Co. v. Hackney, 7 Cir., 1935, 75 F.2d 689, 690; George J. Meyer Mfg. Co. v. Miller Mfg. Co., 7 Cir., 1928, 24 F.2d 505, 507.

60. George J. Meyer Mfg. Co. v. Miller Mfg. Co., 7 Cir., 1928, 24 F.2d 505, 507, 508.