THOMSON NEWSPAPERS, INC., d/b/a
the Adrian Telegram, Plaintiff,

v.

TOLEDO TYPOGRAPHICAL UNION
NO. 63, ITU, et al., Defendants.

Civ. A. No. 39370.

United States District Court,
E. D. Michigan, S. D.

Oct. 16, 1974.

Seyfarth, Shaw, Fairweather & Geraldson, Chicago, Ill., Dickinson, Wright, McKean & Cudlip, Detroit, Mich., for plaintiff.

Miller, Klimist, Cohen, Martens & Sugerman, Detroit, Mich., Beardsley & Forsthoefel, Tecumseh, Mich., for defendants.

## MEMORANDUM OPINION

JAMES HARVEY, District Judge.

The basis of the complaint in this case is an antitrust action by Thomson Newspapers against the two unions which are engaged in a strike against the plaintiff, their strike newspaper, and The Tecumseh Herald, which furnishes printing facilities for the strike newspaper. Plaintiffs allege that the defendants have agreed to a low wage scale for employees of The Maple City Reporter (the strike newspaper) while demanding a much higher wage from The Adrian Telegram (the struck local division of plaintiff Thomson Newspapers) in order to drive the Telegram out of business. Plaintiffs further allege that the defendants have created a violation of the antitrust laws by refusing to accept advertising from establishments which continue to advertise in the Telegram; by inducing customers away from the Telegram by charging below-market rates and absorbing the losses in order to drive the Telegram out of business; and by printing disparaging advertisements in order to compel the public to cease dealing with the Telegram.

The defendants' motion for summary judgment is based on several theories. First, defendants argue that unions are exempt under § 6 of the Clayton Act, 15 U.S.C.A. § 17, even if they do engage in anti-competitive activities. In his order of September 7, 1973, Judge Joiner held that if the union activities complained of constituted either a business run for profit or an illegal combination with The Tecumseh Herald, then the exemption of § 17 would be lost, and the unions would be subject to the prohibitions of the antitrust laws. Section 17 itself excepts from the union exemption union activities run for profit. Judge Joiner cited also Allen Bradley Co. v. Local Union No. 3, 325 U.S. 797, 65 S. Ct. 1533, 89 L.Ed. 1939 (1944), a landmark Supreme Court decision holding that if unions act in concert with nonunion interests, the exemption is again lost.

Thus, the bare argument that, as unions, the defendants cannot be in violation of the antitrust laws, is not supported by the law and will not be the basis of a summary judgment for defendants. The presence or absence of either combination with a nonunion entity or those elements cited in § 17 are fact issues which will be discussed below.

Defendants claim secondly that The Maple City Reporter is the alter ego of the unions and their agent, and therefore it cannot conspire with the unions,

since that would be conspiring with itself. This proposition is disposed of by the decision in Streiffer v. Seafarers Sea Chest Corp., 162 F.Supp. 602 (E.D. La.1958). The court there found a conspiracy between the union and a corporation established by the union, stating "that the combinations prohibited by 15 U.S.C.A. § 1 include a combination between a parent organization and its wholly owned subsidiary." 162 F.Supp. at 606.

Third, the defendants have argued that this Court should defer in this case to the jurisdiction of the National Labor Relations Board under the doctrine of primary jurisdiction. The basis of this argument is that since the case involves issues relating to both antitrust and labor matters, and since the NLRB is an administrative agency specifically created to exercise expertise in matters coming under the National Labor Relations Act and its amendments, the determination of the NLRB should be binding on this Court. The defendants refer the Court to prior decisions of the NLRB involving these same parties, in which the defendants' actions were found to be proper under the NLRA.

This Court does not understand the doctrine of primary jurisdiction to require deference in the situation before it. In Asbestos Workers v. Contractors Assn., 483 F.2d 384 (CA3 1973), cited by the defendants, that doctrine was invoked, but in circumstances very different from these. The court in that case held that a district court should stay its proceedings in order to certify a specific question to the NLRB, where resolution of whether specific action was protected under the NLRA was necessary to a final decision of the case before the district court. A corollary of that principle, applicable to this case, is that where the NLRB has decided a given labor-related issue, the district court should "give appropriate weight to the Board's determinations." 483 F.2d 384 at 401.

In the present case, the issues which have come before the Board already are the questions of whether the unions were in violation of the NLRA in the operation of their strike newspaper, and secondly, whether the plaintiff committed an unfair labor practice by failing to bargain with the unions which it claimed had set themselves up in competition with the plaintiff. In both cases, the Board found in favor of the unions.

■ This Court need not reconsider those findings by the Board in its consideration of the questions which this case puts before it. We are dealing here with an antitrust action which, though involving many of the same facts as the labor complaints, is based on an entirely different theory of law. Whether the activities alleged are proper under the NLRA does not dispose of the question of a possible violation of the antitrust laws. If this Court should reach an issue which is squarely within the expertise of the Board, it will defer at that point to a Board decision. But the mere fact that two of the parties are unions, and that some of the same factual circumstances have led to NLRB complaints, does not compel this Court to invoke the primary jurisdiction doctrine.

■ Next, defendants claim that there is no evidence of any agreement between the unions and the Lincolns, owners of The Tecumseh Herald, and that therefore there can be no illegal combination in restraint of trade in violation of the antitrust laws.* In support of this, several affidavits have been submitted, wherein the lack of such an agreement has been sworn to. In opposition to those affidavits, the plaintiff has argued that circumstantial evidence must be interpreted as showing the existence of an agreement between the union and the Lincolns. Plaintiff argues that no other state of facts could explain the failure of The Tecumseh Herald to unionize, in the light of the union's

* Defendants' argument that if the only combination was between the unions and the Reporter, it is exempt from the operation of the antitrust laws, has been dealt with above.

avowed policy to organize all shops in the area, and its policy not to use non-union facilities. Plaintiff further points to the large arrearage incurred by the Reporter in its payments to the Lincolns, in contravention of their normal policy of timely collection, as an indication of some special arrangement aside from the rental of printing facilities. The question of fact remains to be determined at trial.

■ The second question relative to the preliminary issue of exemption is whether The Maple City Reporter falls outside the language of the exemption section of the Clayton Act—i. e., whether it is a profit-making corporation or has capital stock. It is evident from copies of its articles of incorporation that The Maple City Reporter has capital stock, all of which is owned by the officers of the union, in trust for the membership. Thus, although the Reporter is itself a labor organization, it is subject to the antitrust laws; and the unions by combining with it, make themselves also subject thereto. We need not reach the question of whether it is a profit-making enterprise.

■■ In order to find that a combination is in restraint of trade, it must first be established that the victim of the combination, and the participants in the combination, were in competition. Union Leader Corp. v. Newspapers of New England, 284 F.2d 582 (CA1 1960). The parties have concentrated in their briefs and arguments on the question of the competitive position of The Adrian Telegram vis a vis The Tecumseh Herald. In fact, only one of the allegations in the complaint goes to the behavior of the unions in favoring The Tecumseh Herald to the disadvantage of the struck Adrian Telegram. The other acts charged involve actions enhancing the competitive position of The Maple City Reporter to the detriment of The Adrian Telegram. Thus, even if this Court were to find no competition between The Tecumseh Herald and The Adrian Telegram, all the defendants could still be participating in a conspiracy in restraint of competition between the Telegram and the Reporter. The question of the existence of competition has not been settled to the satisfaction of the Court, but remains for the proofs at trial. But even if no competition existed between the Herald and the Telegram, there would still remain sufficient allegations on which to proceed to trial.

■ Defendants have offered a number of legal arguments which the Court would like to discuss at this time. In the brief supporting their motion for dismissal, defendants asserted that the plaintiff's complaint, charging defendants with agreeing not to organize the employees of The Tecumseh Herald, itself constituted a violation of Section 8(b)(4)(1)(ii)(B) of the Labor Management Relations Act. That assertion is ill-founded. That section prohibits unions from threatening, coercing or restraining an employer by forcing it to bargain with a union which is not a certified representative of its employees. Defendants are here alleging that through its complaint, plaintiff is requiring the unions, as a condition of doing business, to coerce the Lincolns to recognize and bargain with them.

This allegation cannot be taken very seriously, as it would indeed be odd if plaintiff, believing in good faith that the defendants were engaged in an antitrust violation, lacked the right to sue to stop that violation. The mere fact of suit to enforce the antitrust laws is not in this context a violation of the labor laws. The LMRA section in question prohibits unions from acting in a way which coerces an employer to bargain with an uncertified union. 29 U.S.C.A. § 158. This suit is not intended to coerce the Lincolns to bargain with an uncertified union; it goes rather to the alleged *agreement* not to organize. If an agreement was in fact found, and if it were to be enjoined by this Court, the Lincolns would still not be compelled to bargain with an uncertified union; the result would simply be that the unions would have the opportunity to try to organize the employees of The Tecumseh Herald. That would clearly not constitute a violation of the labor laws.

Defendants have also argued that since under the Supreme Court's holding in UMW v. Pennington, 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965), an agreement to organize the Lincolns' workers would have been illegal, then an agreement *not* to organize them must be protected under the labor laws. This is similarly unpersuasive. *Pennington* prohibited a union and an employer from agreeing that the union would impose a given wage scale on another employer with whom the union also had an obligation to bargain. Such an agreement would prevent the union from bargaining in good faith with the second employer. In the present case, we have simply an alleged agreement between a union and an independent employer not to attempt to organize its employees. The evil of bargaining with one employer about the terms and conditions of employment of another employer's work force is simply absent from this situation. Thus, the agreement is in no way protected by the *Pennington* rationale; it stands or falls under the standards of the antitrust laws.

For these reasons, the defendants' motion for summary judgment was denied.